EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Heriberto Torres Villanueva | 2006 TSPR 118 168 DPR ____ |

Número del Caso: AB-2003-216


Fecha: 20 de junio de 2006


Oficina de Inspección de Notarías:

Lcda. Carmen H. Carlos
Directora

Abogados de la Parte Querellada:

Lcdo. Virgilio Mainardi Peralta
Lcdo. Luis J. Marin


Materia: Conducta Profesional
(La suspensión del abogado advino final y firme el día 13 de julio del 2006.)


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

In re

Heriberto Torres Villanueva          AB 2003-216      Queja

PER CURIAM

San Juan, Puerto Rico, a 20 de junio de 2006.

El 5 de marzo de 2004, el Sr. Gilberto Rubén Cuevas Sanjurjo, en adelante, señor Cuevas Sanjurjo presentó ante nos una querella contra el Lcdo. Heriberto Torres Villanueva (en adelante, licenciado Torres Villanueva). El querellante alegó que éste y su entonces esposa, la Sra. Carmen Delia Burgos López, permutaron con la Sra. Wanda Ivette Pagán Rivera (en adelante, señora Pagán Rivera), un apartamento de su propiedad localizado en el Condominio Brisas de Solimar en Luquillo por una casa localizada en la urbanización Santa Isidra en Fajardo. El negocio se llevó a cabo mediante escritura titulada "Permuta de

Inmueble Asumiendo Hipoteca" otorgada ante el licenciado Torres Villanueva. En la referida escritura, cada parte asumió la obligación de continuar pagando el balance de la hipoteca del inmueble que estaba recibiendo.

La escritura no fue presentada en el Registro de la Propiedad y por consiguiente, ninguna de las propiedades fue inscrita a nombre de los nuevos adquirientes. Así las cosas, la señora Pagán Rivera no cumplió con la obligación de seguir pagando la hipoteca del apartamento en el Condominio Brisas de Solimar, según fue acordado en la escritura. Ante esta situación, el Banco Popular, acreedor hipotecario, presentó una demanda de cobro de dinero y ejecución de hipoteca contra el señor Cuevas Sanjurjo y su entonces esposa. El Tribunal dictó sentencia en rebeldía en contra del señor Cuevas Sanjurjo y la propiedad fue posteriormente vendida en pública subasta.

Con posterioridad a ese incidente, la señora Pagán Rivera, mediante escritura otorgada ante el notario querellado, vendió a la Sra. Hilda Burgos López, hermana de la <u>ex-esposa del querellante, la propiedad en la</u> <u>urbanización Santa Isidra que había permutado al señor</u> <u>Cuevas Sanjurjo</u>. La Sra. Hilda Burgos López inscribió e hipotecó la mencionada propiedad. No obstante, según surge de una declaración jurada suscrita por la señora Pagán Rivera, el dinero que ésta recibió producto de la compraventa se lo entregó al señor Cuevas Sanjurjo

inmediatamente luego del cierre de la transacción. La señora Pagán Rivera declaró además que tanto el Sr. Cuevas Sanjurjo como su entonces esposa, la señora Carmen Delia Burgos, tenían conocimiento acerca de la mencionada transacción.

Por los hechos antes relatados, el señor Cuevas Sanjurjo presentó una querella ante este Tribunal en contra del licenciado Torres Villanueva. Alegó que la negligencia del abogado querellado al no presentar la escritura de permuta al Registro de la Propiedad para su correspondiente inscripción le causó serios daños y perjuicios, ya que se enfrentó a una acción de cobro de dinero y ejecución de hipoteca de una propiedad que ya no le pertenecía. Sostuvo además que el abogado querellado fue negligente al autorizar una escritura de compraventa mediante la cual la señora Pagán Rivera le vendió a una tercera persona la propiedad en el Condominio Brisas de Solimar, que había obtenido el señor Cuevas Sanjurjo de ella mediante una escritura de permuta autorizada por el mismo notario.

Oportunamente, el notario contestó la querella y alegó que nunca se obligó a presentar la escritura de permuta al Registro de la Propiedad, ya que existía un acuerdo entre las partes de no hacerlo hasta que el señor Cuevas y su esposa gestionaran un financiamiento. Explicó que al estar sujetas las hipotecas de ambas propiedades a una cláusula de vencimiento inmediato o

"due on sale", les convenía a los otorgantes esperar hasta que los bancos aprobaran los respectivos financiamientos antes de inscribir la escritura de permuta en el Registro de la Propiedad.

Sostuvo además que luego supo que el señor Cuevas Sanjurjo no cualificó para el referido financiamiento, por lo que éste acudió donde la Sra. Hilda Burgos López, hermana de su entonces esposa, para que ésta adquiriera la casa de la Sra. Pagán Rivera. Indicó que el señor Cuevas Sanjurjo estuvo presente durante el otorgamiento de la escritura de compraventa y que la Sra. Pagán Rivera le entregó el dinero que le correspondía de dicha transacción.

La Secretaria de este Tribunal le refirió el asunto a la Directora de la Oficina de Inspección de Notarías (en adelante, ODIN) para la correspondiente investigación e informe. La ODIN compareció mediante un Informe en el que indicó que, a raíz de la investigación realizada, entendía que el notario había violado la fe pública notarial y atentado contra su deber de sinceridad y honradez al servir de instrumento a las partes para alcanzar un fin que no era el expresado en la escritura. Solicitó a este foro que tomara la acción disciplinaria que entendiera procedente, luego de que le requiriera a las partes su posición al respecto.

Emitimos una Resolución en la que le concedimos al abogado querellado un término de 20 días para expresarse

sobre el informe de la Directora de la ODIN. El abogado aceptó los hechos, no obstante, negó haber servido de instrumento a las partes para falsear hechos o alcanzar fines que no fueran los expresados en la escritura. Expresó además que, de ser cierta la conclusión de la ODIN de que los otorgantes de las escrituras en controversia fueron "partes concientes de la simulación de un negocio jurídico", éste no participó ni tuvo conocimiento de tales actuaciones. Finalmente aceptó que pudo haber cometido errores en el ejercicio de su función notarial y precisó que los mismos no fueron incurridos en ánimo de causar perjuicio a las partes ni de lucrarse personalmente.

Le concedimos tanto al abogado querellado como a la ODIN un término de 10 días para comparecer a este Tribunal e informar si daban el asunto por sometido, a los fines de que tomáramos la acción disciplinaria correspondiente. Ambos han comparecido con sus respectivos escritos. Contando con el beneficio de sus comparecencias, procedemos a resolver.

## II.

El artículo 2 de la Ley Notarial de Puerto Rico recoge el principio de la fe pública notarial. Sobre este particular, dicho artículo de la ley dispone lo siguiente:

> *El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios*

> *jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.* 4 L.P.R.A. sec. 2002.

La fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial. *In Re Collazo Sánchez*, 2003 T.S.P.R. 28, res. el 30 de junio de 2003, 159 D.P.R. ___ (2003). El Estado le confiere a un documento autorizado por un notario una presunción de credibilidad y certeza de que lo afirmado en el mismo es cierto, correcto y concuerda con la realidad. *Id.* A tales efectos, este Tribunal ha resuelto que al autorizar un documento, el notario da fe pública y asegura que ese documento cumple con todas las formalidades de ley. El notario asegura además que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. *In re: Feliciano Ruíz*, 117 D.P.R. 269 (1986), *In re Vera Vélez*, 148 D.P.R. 1 (1999).

Como corolario de lo anterior, el notario ejerce una función clave de inestimable importancia en los negocios jurídicos, toda vez que es custodio de la fe pública. Una vez el notario se aparta de cumplir con las obligaciones y deberes que le impone la ley y el

ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública en él depositada. *In Re Charbonier Laureano,* 2002 T.S.P.R. 53, res. el 11 de abril de 2002, 135 D.P.R. __ (2002). Nuestro ordenamiento jurídico condena enérgicamente la participación consciente de un notario en el asesoramiento, redacción u otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime dicha conducta. *In Re Collazo Sánchez, supra.*

Por otro lado, el Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX C. 35, establece, en lo aquí pertinente, lo siguiente:

> *La conducta de cualquier miembro de la profesión legal ante los tribunales, para sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.*
> *No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. […]*

El referido canon impone a todo abogado unas normas mínimas de conducta indispensables para preservar el honor y la dignidad de la profesión. Cualquier hecho aseverado en un instrumento público por un notario que no concuerde con la verdad constituye una violación al Canon 35 de Ética Profesional, independientemente de si hubo intención de faltar a la verdad. *In Re Tejada Rivera,* 2001 T.S.P.R. 136, res. el 24 de septiembre de 2001, 155 D.P.R. ___ (2001).

De otra parte, hemos establecido que para determinar la sanción disciplinaria aplicable a un abogado querellado, podemos tomar en cuenta factores como la reputación del abogado en su comunidad, el previo historial de éste, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera otras consideraciones ya bien atenuantes o agravantes que medien, a tenor con los hechos.

## III.

El licenciado Torres Villanueva fue admitido al ejercicio de la abogacía el 7 de noviembre de 1979 y el 21 de noviembre del mismo año prestó su juramento como notario.  El 22 de junio de 1990, decretamos su suspensión temporal del ejercicio de la abogacía por no cumplir con diligencia los requerimientos de este Tribunal con relación a una queja presentada en su contra.

En el caso ante nuestra consideración, está claro que el notario violó la fe pública notarial.  Al autorizar la escritura de compraventa de la propiedad en la Urbanización San Isidra, el licenciado Torres Villanueva sabía, o debía conocer que el inmueble ya había pasado a manos del señor Cuevas Sanjurjo, mediante la escritura de permuta que el mismo notario autorizó. Más sin embargo, en la mencionada escritura de

compraventa, aparecía como la parte vendedora la Sra. Wanda I. Pagán. Dicho de otro modo, el notario conocía que la parte vendedora no tenía la titularidad sobre el inmueble vendido, independientemente de que la escritura de permuta no se hubiera presentado en el Registro de la Propiedad.

Además, el abogado violó los deberes de sinceridad y honradez que le impone el Canon 35 de Ética Profesional.

Finalmente, hay que reconocer que el notario aceptó que violó la fe pública notarial al haber autorizado la escritura de compraventa sin antes haber dejado sin efecto o al menos hacer mención de la escritura de permuta otorgada previamente. Expresó además que los errores cometidos no fueron incurridos con el ánimo de causar perjuicio a las partes ni tuvo el propósito de lucro personal más allá de los honorarios notariales percibidos. No obstante, como mencionamos en la sección anterior, violar la fe pública notarial conlleva la imposición de sanciones disciplinarias, independientemente del propósito de dicha conducta.

En el presente caso, podemos tomar como atenuantes a favor del licenciado Torres Villanueva el hecho de que admitió lo ocurrido y no tuvo ánimo de lucro. No obstante, no se trata de su primera falta en el ejercicio de su quehacer profesional, aunque sí es su primera falta en el ejercicio del notariado.

En atención a lo anteriormente expuesto, y considerando que la actuación del notario violó la fe pública en él depositada, se suspende al Lcdo. Heriberto Torres Villanueva por un término de tres (3) meses del ejercicio de la notaría en Puerto Rico.

El Alguacil de este Tribunal deberá incautar la obra y sello notarial del licenciado Torres Villanueva y entregarlos a la Directora de la Oficina de Inspección de Notaría para la correspondiente investigación e informe.

Se dictará la Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Heriberto Torres Villanueva        AB 2003-216      Queja

SENTENCIA

San Juan, Puerto Rico, a 20 de junio de 2006.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, y considerando que la actuación del notario violó la fe pública en él depositada, se suspende al Lcdo. Heriberto Torres Villanueva por un término de tres (3) meses del ejercicio de la notaría en Puerto Rico.

El Alguacil de este Tribunal deberá incautar la obra y sello notarial del licenciado Torres Villanueva y entregarlos a la Directora de la Oficina de Inspección de Notaría para la correspondiente investigación e informe.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo