EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Rafael Oliveras López de Victoria | 2008 TSPR 15 <br><br> 173 DPR _____ |

Número del Caso: CP-2004-8

Fecha: 24 de enero de 2008

Abogado de la Parte Querellada:

　　　　　　　Lcdo. Raúl Caballero Meléndez

Oficina del Procurador General:

　　　　　　　Lcda. Miriam Soto Contreras
　　　　　　　Procuradora General Auxiliar

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rafael Oliveras López de Victoria          CP-2004-008

PER CURIAM

San Juan, Puerto Rico, a 24 de enero de 2008.

El Procurador General presentó una querella en contra del Lcdo. Rafael Oliveras López de Victoria imputándole infracción a los Cánones 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C.35 y C.38, por haberle hecho falsas representaciones al tribunal y por haber inducido a error al juzgador.

Oliveras López de Victoria presentó su contestación a la querella, en la cual negó los cargos imputados. Posteriormente, nombramos al Lcdo. Enrique Rivera Santana como Comisionado Especial para que recibiera prueba y nos rindiera

un informe con sus determinaciones de hechos y las recomendaciones que estimase pertinentes. Examinado el informe del Comisionado Especial, así como la totalidad del expediente, concluimos que Oliveras López de Victoria incurrió en las violaciones imputadas.

Los hechos, según expuestos a continuación, surgen del expediente de autos y de las determinaciones fácticas del Comisionado Especial.

I

En febrero de 1993 Oliveras López de Victoria presentó una demanda sobre daños y perjuicios en contra de la Administración de Compensación por Accidentes de Automóviles y otros codemandados, en representación del Sr. John Santiago Torres y la Sra. Migdalia Ubiñas Ubiñas. Posteriormente el foro primario dictó una sentencia a favor de los demandantes, mediante la cual concedió una compensación de $10,000 a favor de Santiago Torres y una de $2,000 a favor de Ubiñas Ubiñas. Dicho foro ordenó también el pago de los intereses post-sentencia y las costas del litigio. Debido a que el caso fue objeto de una apelación ante el otrora Tribunal de Circuito de Apelaciones, el Estado consignó en el Tribunal de Primera Instancia la cantidad adeudada. Más tarde, dicha sentencia advino final y firme.

Durante el año 2001 el co-demandante Santiago Torres estuvo hospitalizado en Orlando, Florida, por un padecimiento de cáncer pulmonar. Oliveras López de Victoria, que era buen amigo de éste, fue a visitarlo

durante su enfermedad. Posteriormente, Santiago Torres falleció en el referido Estado, dejando como descendientes a tres hijos mayores de edad (John Santiago López, Steven Santiago López y Desireé Santiago López) y a una hija menor de edad (Gloriveé Santiago Chaker). Oliveras López de Victoria tuvo conocimiento del hecho de la muerte de Santiago Torres, mas no lo notificó al tribunal donde se había consignado el dinero del litigio.

Aproximadamente un mes después de la muerte de Santiago Torres, Oliveras López de Victoria presentó una petición ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, a nombre de todos los hijos del finado, encaminada a que se autorizara la aceptación de la herencia a beneficio de inventario. La petición se presentó en nombre de todos los hijos de Santiago Torres y daba constancia de que la hija menor de éste, Gloriveé Santiago Chaker, tenía once años.

Más tarde, Oliveras López de Victoria presentó ante la Sala Superior donde estaba consignado el dinero del litigio una moción solicitando el retiro del mismo. Específicamente solicitó que "la división de cuentas expid[iera] dos cheques, uno a nombre del demandante Sr. John Santiago[1] y otro a favor del suscribiente [Oliveras] ascendente a la suma de $4,484.32, que representa[ba] el 33% por concepto de honorarios de abogado". Claramente, para esa fecha Santiago Torres ya había fallecido.

---

[1] Oliveras López de Victoria solicitó que el cheque se hiciera a favor de John Santiago, sin incluir su segundo apellido.

El foro primario señaló una vista para atender el pedido de retiro de fondos. En el tiempo transcurrido entre el día en que se presentó la moción de retiro de fondos y el día de la vista, no se presentó escrito alguno al tribunal haciendo constar la muerte de Santiago Torres, ni se promovió una sustitución de parte.

Al comienzo de la vista, Oliveras López de Victoria tampoco le informó al juez sobre la muerte de Santiago Torres. Más bien, sus primeras manifestaciones estuvieron encaminadas a que se aclarara el monto del dinero consignado, pues entendía que faltaban algunos fondos por consignar. Además, en un momento dado el juez preguntó si había menores de edad involucrados en el caso, a lo que Oliveras López de Victoria contestó en la negativa. A su vez, éste solicitó que se desglosaran sus honorarios de las compensaciones concedidas a los demandantes. Ante esa petición, el juez expresó que iba a ordenar "que se haga el cheque a favor de John Santiago Torres[2] y Migdalia Ubiñas Ubiñas, de acuerdo a la sentencia del Apelativo y cualquier situación usted, conforme a su contrato de servicios profesionales, su cliente entonces, usted resuelve con su cliente".

No fue hasta ese momento (en que se ordenó la preparación del cheque a favor de Santiago Torres) que Oliveras expresó que había una situación que señalar, que "el señor Santiago murió" y que sus herederos residían en los Estados Unidos. Luego de dialogar con una señora que estaba en la sala, Oliveras López de

---

[2] Nótese que el juez ordenó que el cheque se hiciera a favor del co-demandante, utilizando sus dos apellidos.

Victoria le indicó al tribunal que también había una menor de edad, contrario a lo que había afirmado antes.

Acto seguido, el juez confrontó a Oliveras López de Victoria con el contenido de la moción de retiro de fondos, a lo que éste respondió que estaba enfermo cuando firmó la moción; que había sido un "error" de su parte haber solicitado que se expidiera un cheque a nombre de una persona que había fallecido y que creía haber firmado dicha moción cuando se encontraba en el hospital. A su vez, comenzó a explicar las condiciones médicas que padecía[3] y las hospitalizaciones que había tenido.

Enterado del hecho de la muerte de Santiago Torres, el juez retiró la orden para que se emitiera el cheque y, en su lugar, ordenó que se le notificara el nombre de los herederos y que se obtuviera un relevo del Departamento de Hacienda. Asimismo, ordenó que se trajera el asunto ante la consideración de este Tribunal.

A la luz de este trasfondo fáctico, debemos resolver si Oliveras López de Victoria incurrió en las faltas imputadas; es decir, si infringió los Cánones 35 y 38 de ética profesional.

---

[3] Celulitis y trombosis en ambas piernas, hipertensión y diabetes.

II

El Canon 35 del Código de Ética Profesional establece, en lo pertinente, que la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. Allí se dispone que no es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad y que no se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. 4 L.P.R.A. Ap. IX C.35.

El mencionado precepto le impone a todo abogado unas normas mínimas de conducta, indispensables para promover el honor y la dignidad de la profesión. In re López de Victoria I, res. 22 de septiembre de 2004, 2004 TSPR 176; In re Collazo Sánchez, 159 D.P.R. 769 (2003); In re Montañez Miranda, 157 D.P.R. 275 (2002); In re Curras Ortiz, 141 D.P.R. 399 (1996). Hemos sido enfáticos al establecer el imperativo que exige a todo abogado cumplir con los deberes de sinceridad, de exaltación del honor y la dignidad de la profesión.

De conformidad con tales postulados éticos, hemos señalado que el abogado no puede proveer al tribunal información falsa o que no se ajuste a la verdad, ni puede tampoco ocultarle información certera que deba ser revelada. In re Filardi Guzmán, 144 D.P.R. 710 (1998). Evidentemente, ante una imputación de violación del Canon 35 no es defensa el que no se haya obrado de mala fe o deliberadamente, ni con la intención de engañar o defraudar. Tampoco importa que no se haya causado daño a un tercero. In re Astacio Caraballo, 149 D.P.R. 790 (2000).

Por otra parte, debemos recordar que el Canon 38 del Código de Ética Profesional le exige a todo abogado el deber de esforzarse, al máximo de su capacidad, en la exaltación del honor y de la dignidad de la profesión, aunque el así hacerlo conlleve sacrificios personales. 4 L.P.R.A. Ap. IX C.38. A su vez, dicho Canon le impone la responsabilidad de evitar hasta la apariencia de conducta profesional impropia. Con respecto a la apariencia de conducta impropia, hemos expresado que la misma puede resultar muy perniciosa al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados. In re Gordon Menéndez, res. 18 de mayo de 2007, 2007 TSPR 108. La apariencia de conducta impropia claramente tiene un efecto dañino sobre la imagen, confianza y respeto de la ciudadanía hacia la profesión, igual que lo tiene la verdadera "impropiedad ética". Id.

Con esto en mente, pasamos a disponer del caso ante nuestra consideración.

III

En el caso de autos, Oliveras López de Victoria presentó la moción de retiro de los fondos consignados en el tribunal cuatro meses después de la muerte de quien fuera su cliente, el señor Santiago Torres. Para esa fecha, él conocía de la muerte acaecida en el mes de abril de 2001. Evidencia de ello es el hecho de que, a tan sólo un mes del suceso, el propio Oliveras López de Victoria promovió –en representación de sus herederos– una acción encaminada a que se decretara la aceptación de la herencia a beneficio de inventario.

No obstante lo anterior, en la moción de retiro de fondos Oliveras López de Victoria no hizo mención de la muerte de su cliente, aun cuando ello era imprescindible para que se ordenara su sustitución por las personas que serían beneficiarias de los fondos consignados.  Así lo exige la Regla 22.1(a) de Procedimiento Civil, la cual -en lo pertinente- dispone que si una parte fallece y la reclamación no queda por ello extinguida, cualquiera de las partes en el procedimiento o sus abogados debe notificar el fallecimiento al tribunal y a las otras partes dentro del término de treinta (30) días contados desde la fecha en que se conozca el hecho. 32 L.P.R.A. Ap. III R. 22.1(a).

Sin duda, Oliveras López de Victoria conocía o debía conocer el procedimiento disponible en situaciones de esta naturaleza.  A pesar de ello, éste no cumplió con la normativa aplicable al pedir el retiro de los fondos y omitió informar un hecho que debió darse a conocer al tribunal. En lugar de informar el mencionado fallecimiento, Oliveras López de Victoria solicitó que se expidieran dos cheques, uno a nombre de "John Santiago" y otro a su favor. Nótese que en la moción sólo se incluyó el nombre de John Santiago, sin incluir el segundo apellido.  Dado que el hijo mayor de Santiago Torres se llama John Santiago López, se podía prever el riesgo de que el cheque fuera cambiado por éste.

De lo anterior surge con claridad que Oliveras López de Victoria utilizó un mecanismo impropio, tratando de que el tribunal ordenara el retiro de los fondos sin que éste adviniera en conocimiento del

hecho de la muerte del beneficiario. Al así actuar, faltó al deber de sinceridad y honradez hacia el tribunal y trató de inducir a error al juzgador, en abierta contravención a la norma establecida en el Canon 35 de ética profesional.

Más aún, Oliveras actuó de la forma señalada movido por el ánimo de cobrar sus honorarios de abogado. De esa forma, antepuso sus intereses personales por encima de la pureza de los procesos judiciales. Ello, sin duda, contradice la norma establecida en el Canon 38 a los efectos de que un abogado debe mantener el honor y la dignidad de la profesión aunque hacerlo suponga sacrificios personales.

Las justificaciones ofrecidas por Oliveras López de Victoria tendentes a establecer que todo se debió a un mero error de su parte, no nos convencen. Éste conocía el hecho de la muerte de su cliente y, como abogado, sabía que tenía el deber de informarlo al tribunal. Desde que presentó la moción de retiro de fondos hasta que se ventiló la vista para atender ese pedido transcurrieron más de cuatro meses. No obstante, en todo ese tiempo Oliveras López de Victoria no corrigió la información. Según su propio testimonio ante el Comisionado Especial, el día antes de la vista él revisó el expediente del caso y se percató del error. Sin embargo, a pesar de la importancia de la información, al comenzar la vista al día siguiente no lo informó de inmediato al tribunal. Por el contrario, a sabiendas, hizo expresiones encaminadas a que se ordenara el retiro de los fondos a nombre una persona fallecida. No fue hasta que se

complicó la situación, cuando el juez dispuso que ordenaría la preparación de un cheque a favor de John Santiago Torres y Migdalia Ubiñas Ubiñas, que Oliveras López de Victoria informó al tribunal sobre la muerte de Santiago Torres.

Adviértase también que anteriormente el juez había preguntado si había menores de edad o incapaces involucrados en el pleito, a lo que Oliveras López de Victoria respondió en la negativa. De esa manera, le mintió al tribunal deliberadamente pues en la petición de los herederos para aceptar la herencia a beneficio de inventario él mismo hizo constar que había una menor de once años descendiente de Santiago Torres.

Por otro lado, no podemos avalar el intento de Oliveras López de Victoria de justificar su alegado error, refugiándose en la condición de salud que padecía. Evidentemente, si un abogado acepta una encomienda legal a pesar de una condición de salud, no puede usarla luego como pretexto para incumplir con sus deberes. Una vez acepta fungir como abogado en tales condiciones, debe ajustarse a los postulados éticos que rigen el ejercicio de la profesión. Cuando Oliveras López de Victoria firmó la moción para el retiro de los fondos —aun asumiendo que la firmó en el hospital— no tenía impedimento alguno para revisar su contenido y, si lo tenía, no debió haberla firmado.

Finalmente, cabe señalar que Oliveras López de Victoria no replicó al informe del Comisionado Especial, sino que se limitó a presentar dos escritos en los cuales —una vez más— desplegó conducta cuestionable. En tales escritos, adujo que las firmas contenidas tanto en la moción encaminada a que los

descendientes de Santiago Torres aceptaran la herencia a beneficio de inventario como en la moción solicitando el retiro de los fondos consignados en el tribunal no eran suyas, sino que las mismas habían sido falsificadas. De esa forma, hasta el último momento Oliveras López de Victoria empleó alegaciones infundadas intentando esquivar las consecuencias del presente procedimiento disciplinario.

IV

Por los fundamentos que anteceden, resolvemos que el Lcdo. Rafael Oliveras López de Victoria violó los Cánones 35 y 38 del Código de Ética Profesional. En vista de ello, y tomando en consideración que anteriormente este Tribunal había tomado acción disciplinaria en su contra,[4] consideramos procedente suspenderlo indefinidamente del ejercicio de la profesión.

Se dictará sentencia de conformidad.

---

[4] El 16 de mayo de 2001 el querellado fue suspendido por un año del ejercicio de la notaría. *In re* Oliveras López de Victoria, 154 D.P.R. 187 (2001).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Rafael Oliveras López de Victoria          CP-2004-008


SENTENCIA

San Juan, Puerto Rico, a 24 de enero de 2008.

Por los fundamentos que anteceden en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente Sentencia, resolvemos que el Lcdo. Rafael Oliveras López de Victoria violó los Cánones 35 y 38 del Código de Ética Profesional. En vista de ello, y tomando en consideración que anteriormente este Tribunal había tomado acción disciplinaria en su contra,[5] consideramos procedente suspenderlo indefinidamente del ejercicio de la profesión.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

---

[5] El 16 de mayo de 2001 el querellado fue suspendido por un año del ejercicio de la notaría. *In re* Oliveras López de Victoria, 154 D.P.R. 187 (2001).