per curiam:
El Procurador General presentó una quere-lla contra el Ledo. Rafael Oliveras López de Victoria en la que le imputó unas infracciones a los Cánones 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, por haberle hecho falsas representaciones al tribunal y por haber indu-cido a error al juzgador.
Oliveras López de Victoria presentó su contestación a la querella, en la cual negó los cargos imputados. Posterior-mente, nombramos al Ledo. Enrique Rivera Santana como Comisionado Especial para que recibiera la prueba y nos rindiera un informe con sus determinaciones de hecho y las recomendaciones que estimase pertinentes. Examinado el informe del Comisionado Especial, así como la totalidad del expediente, concluimos que Oliveras López de Victoria incurrió en las violaciones imputadas.
Los hechos, según expuestos a continuación, surgen del expediente de autos y de las determinaciones fácticas del Comisionado Especial.
I
En febrero de 1993 Oliveras López de Victoria presentó una demanda sobre daños y perjuicios contra la Adminis-tración de Compensación por Accidentes de Automóviles y otros codemandados, en representación del Sr. John San *8 tiago Torres y la Sra. Migdalia Ubiñas Ubiñas. Posterior-mente, el foro primario dictó una sentencia a favor de los demandantes, mediante la cual concedió una compensa-ción de $10,000 a favor de Santiago Torres y una de $2,000 a favor de Ubiñas Ubiñas. Dicho foro ordenó también el pago de los intereses post sentencia y las costas del litigio. Debido a que el caso fue objeto de una apelación ante el otrora Tribunal de Circuito de Apelaciones, el Estado con-signó en el Tribunal de Primera Instancia la cantidad adeudada. Más tarde, dicha sentencia advino final y firme.
Durante el 2001, el codemandante Santiago Torres es-tuvo hospitalizado en Orlando, Florida, por un padeci-miento de cáncer pulmonar. Oliveras López de Victoria, que era buen amigo de éste, fue a visitarlo durante su enfermedad. Posteriormente, Santiago Torres falleció en el referido Estado, dejando como descendientes a tres hijos mayores de edad (John Santiago López, Steven Santiago López y Desireé Santiago López) y a una hija menor de edad (Gloriveé Santiago Chaker). Oliveras López de Victoria tuvo conocimiento del hecho de la muerte de Santiago Torres, mas no lo notificó al tribunal donde se había con-signado el dinero del litigio.
Aproximadamente un mes después de la muerte de Santiago Torres, Oliveras López de Victoria presentó una peti-ción ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, a nombre de todos los hijos del finado, enca-minada a que se autorizara la aceptación de la herencia a beneficio de inventario. La petición se presentó en nombre de todos los hijos de Santiago Torres y daba constancia de que la hija menor de éste, Gloriveé Santiago Chaker, tenía once años.
Más tarde, Oliveras López de Victoria presentó ante la Sala Superior donde estaba consignado el dinero del litigio una moción para solicitar el retiro de éste. Específicamente solicitó que “la división de cuentas expidiera] dos cheques [,] uno a nombre del demandante Sr. John Santiago *9 (1) y otro a favor del suscribiente [Oliveras] ascendente a la suma de $4,484.32, que representa[ba] el 33% por con-cepto de honorarios de abogado”. Solicitud de reconsidera-ción, Exhibit D, pág. 70. Claramente, para esa fecha Santiago Torres ya había fallecido.
El foro primario señaló una vista para atender el pedido de retiro de fondos. En el tiempo transcurrido entre el día en que se presentó la moción de retiro de fondos y el día de la vista, no se presentó escrito alguno al tribunal en el que se hiciera constar la muerte de Santiago Torres ni se pro-movió una sustitución de parte.
Al comienzo de la vista, Oliveras López de Victoria tam-poco informó al juez sobre la muerte de Santiago Torres. Más bien, sus primeras manifestaciones estuvieron enca-minadas a que se aclarara el monto del dinero consignado, pues entendía que faltaban algunos fondos , por consignar. Además, en un momento dado, el juez preguntó si había menores de edad involucrados en el caso, a lo que Oliveras López de Victoria contestó que no. A su vez, éste solicitó que sé desglosaran sus honorarios de las compensaciones concedidas á los demandantés. Ante esa petición, el juez expresó que iba a ordenar “que se haga el cheque a favor de John Santiago Torres(2) y Migdalia Ubiñas Ubiñas, de acuerdo a la sentencia del Apelativo y [que] cualquier si-tuación [Oliveras López de Victoria], conforme a su con-trato de servicios profesionales, su cliente entonces, ... resuelvfa] con su cliente”. Querella, Anejo I, pág. 5.
No fue hasta ese momento (cuando se ordenó la prepa-ración del cheque a favor de Santiago Torres) que Oliveras López de Victoria expresó que había una situación que se-ñalar, que “el señor Santiago murió” y que sus herederos *10 residían en Estados Unidos. Luego de dialogar con una se-ñora que estaba en la sala, Oliveras López de Victoria le indicó al tribunal que también había una menor de edad, contrario a lo que había afirmado antes.
Acto seguido, el juez confrontó a Oliveras López de Victoria con el contenido de la moción de retiro de fondos, a lo que éste respondió que estaba enfermo cuando firmó la mo-ción; que había sido un “error” de su parte haber solicitado que se expidiera un cheque a nombre de una persona que había fallecido y que creía haber firmado dicha moción cuando se encontraba en el hospital. A su vez, comenzó a explicar las condiciones médicas que padecía(3) y las hospi-talizaciones que había tenido.
Enterado del hecho de la muerte de Santiago Torres, el juez retiró la orden para que se emitiera el cheque y, en su lugar, ordenó que se le notificara el nombre de los herede-ros y que se obtuviera un relevo del Departamento de Hacienda. Asimismo, ordenó que se trajera el asunto ante la corisideración de este Tribunal.
Según este trasfondo fáctico, debemos resolver si Olive-ras López de Victoria incurrió en las faltas imputadas; es decir, si infringió los Cánones 35 y 38 del Código de Etica Profesional, supra.
II
El citado Canon 35 del Código de Ética Profesional establece, en lo pertinente, que la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros, debe ser sincera y honrada. Allí se dispone que no es sincero ni honrado utilizar medios que sean incompatibles con la verdad y que no se debe inducir a error al juz- *11 gador utilizando artificios o una falsa relación de los he-chos o del Derecho. 4 L.P.R.A. Ap. IX.
El mencionado precepto impone a todo abogado unas normas mínimas de conducta, indispensables para promo-ver el honor y la dignidad de la profesión. In re López de Victoria I, 163 D.P.R. 1 (2004); In re Collazo Sánchez, 159 D.P.R. 769 (2003); In re Montañez Miranda, 157 D.P.R. 275 (2002); In re Currás Ortiz, 141 D.P.R. 399 (1996). Hemos sido enfáticos al establecer el imperativo que exige a todo abogado cumplir con los deberes de sinceridad, de exaltación del honor y la dignidad de la profesión.
En conformidad con tales postulados éticos, he-mos señalado que el abogado no puede proveer al tribunal información falsa o que no se ajuste a la verdad, ni puede ocultarle información certera que deba ser revelada. In re Filardi Guzmán, 144 D.P.R. 710 (1998). Evidentemente, ante una imputación de violación del Canon 35, no es defensa que no se haya obrado de mala fe o deliberadamente ni con la intención de engañar o defraudar. Tampoco importa que no se haya causado daño a un tercero. In re Astacio Caraballo, 149 D.P.R. 790 (1999).
Por otra parte, debemos recordar que el Canon 38 del Código de Etica Profesional, supra, exige a todo abogado el deber de esforzarse, al máximo de su capacidad, en la exaltación del honor y de la dignidad de la profesión, aunque el así hacerlo conlleve sacrificios personales. Este canon impone al abogado la responsabilidad de evitar hasta la apariencia de conducta profesional impropia. He-mos expresado que la apariencia de conducta impropia puede resultar muy perniciosa al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados. In re Gordon Menéndez I, 171 D.P.R. 210 (2007). La apariencia de conducta impropia tiene, claramente, un efecto dañino sobre la imagen, la confianza y el respeto de la ciudadanía hacia la profesión, *12 igual que lo tiene la verdadera “impropiedad ética”. In re Gordon Menéndez I, supra.
Con esto en mente, pasamos a disponer del caso ante nuestra consideración.
III
En el caso de autos, Oliveras López de Victoria presentó la moción de retiro de los fondos consignados en el tribunal cuatro meses después de la muerte de quien fuera su cliente, el señor Santiago Torres. Para esa fecha, él conocía que su cliente había fallecido en abril de 2001. Evidencia de esto es el hecho de que, a tan sólo un mes del suceso, el propio Oliveras López de Victoria promovió —en represen-tación de sus herederos— una acción encaminada a que se decretara la aceptación de la herencia a beneficio de inventario.
No obstante lo anterior, en la moción de retiro de fondos, Oliveras López de Victoria no mencionó la muerte de su cliente, aun cuando ello era imprescindible para que se or-denara su sustitución por las personas que serían benefi-ciarías de los fondos consignados. Así lo exige la Regla 22.1(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III, la cual —en lo pertinente— dispone que si una parte fallece y la reclamación no se extingue, cualquiera de las partes en el procedimiento o sus abogados debe notificar el falleci-miento al tribunal y a las otras partes dentro del término de treinta días contados desde la fecha en que se conozca el hecho.
Sin duda, Oliveras López de Victoria conocía o debía conocer el procedimiento disponible en situaciones de esta naturaleza. A pesar de ello, éste no cumplió con la norma-tiva aplicable al pedir el retiro de los fondos y omitió infor-mar un hecho que debió notificar al tribunal. En lugar de informar el mencionado fallecimiento, Oliveras López de Victoria solicitó que se expidieran dos cheques, uno a nom- *13 bre de “John Santiago” y otro a su favor. Nótese que en la moción sólo se incluyó el nombre de John Santiago, sin incluir el segundo apellido. Dado que el hijo mayor de Santiago Torres se llama John Santiago López, se podía prever el riesgo de que éste cambiara el cheque.
De lo anterior surge con claridad que Oliveras López de Victoria utilizó un mecanismo impropio, tratando de que el tribunal ordenara el retiro de los fondos sin que éste conociera el hecho de la muerte del beneficiario. Al así actuar, faltó al deber de sinceridad y honradez hacia el tribunal y trató de inducir a error al juzgador, en abierta contravención a la norma establecida en el Canon 35 del Código de Etica Profesional, supra.
Más aún, Oliveras López de Victoria actuó de la. forma señalada movido por el ánimo de cobrar sus honorarios de abogado. De esa forma, antepuso sus intereses personales por encima de la pureza de los procesos judiciales. Esto, sin duda, contradice la norma establecida en el citado Canon 38, a los efectos de que un abogado debe mantener el honor y la dignidad de la profesión aunque hacerlo suponga sacrificios personales.
Las justificaciones ofrecidas por Oliveras López de Victoria —tendentes a establecer que todo se debió a un mero error de su parte— no nos convencen. Este conocía el hecho de la muerte de su cliente y, como abogado, sabía que tenía el deber de informarlo a.1 tribunal. Desde que presentó la moción de retiro de fondos hasta que se ventiló la vista para atender ese pedido transcurrieron más de cuatro meses. No obstante, en todo ese tiempo Oliveras López de Victoria no corrigió la información. Según su propio testi-monio ante el Comisionado Especial, el día antes de la vista él revisó el expediente del caso y se percató del error. Sin embargo, a pesar de la importancia de la información, al comenzar la vista al día siguiente no lo informó de in-mediato al tribunal. Por el contrario, a sabiendas, hizo ex-presiones encaminadas a que se ordenara el retiro de los *14 fondos a nombre una persona fallecida. No fue hasta que se complicó la situación —cuando el juez dispuso que ordena-ría la preparación de un cheque a favor de John Santiago Torres y de Migdalia Ubiñas Ubiñas— que Oliveras López de Victoria informó al tribunal sobre la muerte de Santiago Torres.
Adviértase también que anteriormente el juez había preguntado si había menores de edad o incapaces involu-crados en el pleito, a lo que Oliveras López de Victoria respondió en la negativa. De esa manera, le mintió al tribunal deliberadamente, pues en la petición de los herede-ros para aceptar la herencia a beneficio de inventario él mismo hizo constar que había una menor de once años des-cendiente de Santiago Torres.
Por otro lado, no podemos avalar el intento de Oliveras López de Victoria de justificar su alegado error, refugiándose en la condición de salud que padecía. Evidentemente, si un abogado acepta una encomienda legal a pesar de una condición de salud, no puede usarla luego como pretexto para incumplir con sus deberes. Una vez acepta fungir como abogado en tales condiciones, debe ajustarse a los postulados éticos que rigen el ejercicio de la profesión. Cuando Oliveras López de Victoria firmó la moción para el retiro de los fondos —aun asumiendo que la firmó en el hospital— no tenía impedimento alguno para revisar su contenido, y si lo tenía, no debió haberla firmado.
Por último, cabe señalar que Oliveras López de Victoria no replicó al informe del Comisionado Especial, sino que se limitó a presentar dos escritos en los cuales —una vez más— desplegó una conducta cuestionable. En tales escri-tos adujo que las firmas contenidas, tanto en la moción encaminada a que los descendientes de Santiago Torres aceptaran la herencia a beneficio de inventario como en la moción de retiro de los fondos consignados en el tribunal, no eran suyas, sino que habían sido falsificadas. De esa forma, Oliveras López de Victoria empleó hasta el último *15 momento unas alegaciones infundadas intentando esqui-var las consecuencias del presente procedimiento disciplinario.
IV
Por los fundamentos que anteceden, resolvemos que el Ledo. Rafael Oliveras López de Victoria violó los Cánones 35 y 38 del Código de Etica Profesional. Como consecuencia, y tomando en consideración que este Tribunal había tomado acción disciplinaria en su contra,(4) consideramos procedente suspenderlo indefinidamente del ejercicio de la profesión.

Se dictará sentencia de conformidad.

 Oliveras López de Victoria solicitó que el cheque se hiciera a favor de John Santiago, sin incluir su segundo apellido.

 Nótese que el juez ordenó que el cheque se hiciera a favor del codemandante, utilizando sus dos apellidos.

 Celulitis y trombosis en ambas piernas, hipertensión y diabetes.

 El 16 de mayo de 2001 el querellado fue suspendido por un año del ejercicio de la notaría. In re Oliveras López de Victoria, 154 D.P.R. 187 (2001).