EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Carlos J. Nazario Díaz | 2008 TSPR 134 174 DPR \_\_\_\_ |

Número del Caso: CP-2006-20

Fecha: 30 junio de 2008

Abogado de la Parte Querellada:

Lcdo. Héctor Díaz Olmo

Oficina del Procurador General:

Lcda. Noemí Rivera De León
Procuradora General Auxiliar

Lcda. Maite D. Oronoz Rodríguez
Subprocuradora General

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

CP-2006-20

Carlos J. Nazario Díaz

PER CURIAM

San Juan, Puerto Rico, a 30 de junio de 2008.

El Lic. Carlos J. Nazario Díaz fue admitido al ejercicio de la abogacía en Puerto Rico el 22 de julio de 1997 y al ejercicio del notariado el 15 de agosto de 1997. El presente procedimiento disciplinario contiene la formulación de una serie de cargos por conducta alegadamente violatoria al Artículo 2 de la Ley de Notarial de 1987, los Cánones 18, 35, y 38 del Código de Ética Profesional.

I

La presente querella se origina con la radicación de una queja ante la Oficina del

Procurador General por el señor Francisco A. Quiles, en contra del Lic. Carlos J. Nazario Díaz, en adelante Lic. Nazario Díaz. El 16 de junio de 2006, referimos la queja al Procurador General para investigación e informe. Recibido el Informe del Procurador en el cual concluía que el Lic. Nazario Díaz había incurrido en violaciones a los Cánones 18,35 y 38 de Ética Profesional[1] y Ley Núm. 75 del 2 de julio de 1987[2], ordenamos presentar la querella correspondiente en contra del Lic. Nazario Díaz.

El 13 de febrero de 2007 mediante Resolución emitida por este Tribunal designamos a la Honorable Crisanta González Seda como Comisionada Especial para que recibiera la prueba correspondiente y nos rindiera un Informe.

Aclarado el trámite procesal pasamos a resumir los hechos que sirven de trasfondo a la querella que pende ante nuestra atención.

II

En el año 1991, el señor Francisco A. Quiles y su esposa, la señora Alicia Ortiz Rodríguez, en adelante los compradores y/o querellantes, iniciaron los trámites para adquirir un solar ubicado en el Barrio Buena Vista del municipio de Bayamón. Dicho solar constaba inscrito a favor de la señora Aurelia Velásquez y la sucesión del señor Jorge Torres Febo, padre del señor Pablo Torres

---

[1] 4 L.P.R.A. Ap. IX, C.18, 35 y 38.

[2] 4 L.P.R.A. sec 2002.

Figueroa, única hijo del fenecido esposo de la señora Aurelia Velásquez, quienes accedieron a vender el solar.[3]

Para realizar los trámites legales correspondientes de la compra del solar, el señor Francisco A. Quiles y su esposa, contrataron los servicios el Lic. Ricardo Skerrett.[4] El Lic. Skerrett se comprometió a preparar la declaratoria de herederos del occiso, señor Jorge Torres Febo, a petición de la señora Aurelia Velásquez y su hijastro, el señor Pablo Torres Figueroa y a presentar en el Registro de la Propiedad la escritura de compraventa del referido solar con la resolución judicial obtenida durante el proceso de declaratoria de herederos.

La escritura de compraventa se otorgó ante el Lic. Skerrett. Los gastos de la declaratoria de herederos fueron pagados por los vendedores y los gastos de la escritura de compraventa por los compradores. El señor Francisco A. Quiles y su esposa, entendieron que el Lic. Skerrett tenía todos los documentos necesarios y confiaron a éste todo lo relacionado para la inscripción de la escritura de compraventa.

---

[3] La Señora Aurelia Velásquez y su hijastro, el Señor Pablo Torres Figueroa residían en el estado de Florida al momento de efectuarse la compraventa del solar.

[4] Resulta imprescindible remontarse al año 1991, a los fines de esbozar los hechos que antecedieron a la actuación del Lic. Carlos J. Nazario Díaz y, que ocasionaron que los compradores no figuraran como dueños del solar en el Registro de la Propiedad.

Luego de un tiempo, el Lic. Skerrett le entregó al señor Francisco A. Quiles, copia de la escritura de compraventa. Dicha copia resultó ser un borrador de la escritura número cuatro (4) otorgada, pero la misma no contenía el día, ni mes.

En el año 1995, los compradores advinieron en conocimiento de que el Lic. Skerrett, no tramitó ninguno de los documentos encomendados. A raíz de ello, comparecieron ante la Oficina del Procurador General y presentaron una queja en su contra.[5]

Para resolver el problema que tenían con la escritura y la tramitación de su inscripción, el señor Francisco A. Quiles habló con el licenciado Peter Serrano quien les expresó que, por la cantidad de trabajo y compromisos que en ese momento tenía les refirió al licenciado Carlos J. Nazario Díaz, en adelante Lic. Nazario Díaz o el querellado. Es así como el señor Francisco A. Quiles y su esposa, la señora Aurelia Ortiz Rodríguez, contrataron los servicios del Lic. Nazario Díaz.

---

[5] Los compradores alegaron que al Lic. Skerrett se le pagó la cantidad de $ 250.00 por la declaratoria de herederos y, que éste había indicado que sólo restaba presentar la escritura de compraventa al Registro de la Propiedad. A través de una certificación expedida por la Supervisora de Índices notariales pudieron constatar que, de los registros de la Oficina de Inspección y Notarias para el año 1991, no aparecía reportada la escritura de compraventa número cuatro (4) otorgada por el Lic. Skerrett. En adición, se les informó que el Lic. Skerrett fue suspendido del ejercicio de la abogacía del año 1993 al año 2001 por otros hechos y que, al momento, se encontraba en los Estados Unidos.

El 14 de octubre de 1997, el Lic. Nazario Díaz otorgó la escritura de compraventa Número seis (6). Según se acordó, los compradores recogieron en la oficina del Lic. Nazario Díaz la escritura de compraventa en un sobre sellado y la presentaron ante el Registro de la Propiedad.[6]

Durante el año 1998, los compradores decidieron gestionar un préstamo garantizado con la propiedad en cuestión, a través de Champion Mortgage. Para ello se otorgó una escritura de primera hipoteca a favor de Champion Mortgage ante el licenciado Ruy V. Díaz Díaz.

El 10 de octubre de 1999, la licenciada María Teresa Pérez Torres, abogada de Champion Mortgage, en adelante Lic. Pérez Torres, dirigió una misiva al Lic. Nazario Díaz en la cual le informó que la escritura de compraventa suscrita por él no pudo ser inscrita pues se requería presentar ante el Registro de la Propiedad los documentos relacionados con la herencia. La Lic. Pérez Torres, explicó a los compradores que el préstamo hipotecario solicitado dependía de que la escritura de compraventa fuese debidamente inscrita en el Registro de la Propiedad.

El  22 de febrero de 1999, el Lic. Nazario Díaz contestó la carta de la Lic. Pérez Torres, en la que indicó lo siguiente:

> "Mi cliente, el señor Francisco A. Quiles, conseguirá los documentos de herencia

---

[6] Minuta de asiento de presentación de 10 de diciembre de 1997, en la que se hace referencia  a la Escritura Número seis (6), otorgada ante el notario.

solicitados por el Registro de la Propiedad. Favor de <u>concedernos tiempo suficiente para poder conseguir y radicar dichos documentos</u>, para que el registro sea debidamente completado".[7] (Subrayado nuestro)

No obstante, surge del expediente que en conversación telefónica, el señor Francisco A. Quiles, le indicó al Lic. Nazario Díaz, que contrataría a otro abogado para que preparase la instancia y radicación de la declaratoria de herederos[8]. El señor Francisco A. Quiles y su esposa, retiraron la escritura de compraventa del Registro de la Propiedad.

El 10 de enero de 2001, la Lic. Pérez Torres dirigió una segunda misiva al señor Francisco Quiles, y a su esposa, en la que les urgió a presentar en el Registro de la Propiedad los documentos relacionados con la declaratoria de herederos del señor Jorge Torres Febo, ya que hasta que no se presentasen, la propiedad seguiría inscrita a favor de la vendedora y la sucesión del señor Jorge Torres Febo.

Surge del "Informe del Comisionado Especial" que, en el mes de diciembre de 2000, la Lic. Pérez Torres se comunicó telefónicamente con el Lic. Nazario Díaz. Durante la conversación, ésta le reclamó al Lic. Nazario Díaz que,

---

[7] Carta del 22 de febrero de 1999 del Lic. Nazario Díaz a la Lic. María Teresa Pérez.

[8] Carta del 15 de marzo de 1999 del Lic. Nazario Díaz al señor Francisco A. Quiles.

a pesar del pago recibido por la declaratoria de herederos, aún éste no había realizado los trámites pertinentes. El Lic. Nazario Díaz afirmó que él no había recibido pago alguno por la tramitación de la declaratoria de herederos sino por la escritura de compraventa. Ante esta situación, el señor Francisco A. Quiles y su esposa, se dirigieron al Colegio de Abogados y posteriormente, al Procurador General, a los fines de presentar una queja contra el Lic. Nazario Díaz.

Así las cosas, el Lic. Nazario Díaz le comunicó al señor Francisco A. Quiles que estaba dispuesto a completar gratuitamente el trámite necesario de la declaratoria de herederos y la inscripción de la escritura de compraventa en el Registro de la Propiedad.

Sin embargo, el señor Francisco A. Quiles, le comunicó al Lic. Nazario Díaz que prefería que un abogado de su confianza, el licenciado Santos Sifonte, gestionara estos asuntos. El Lic. Nazario Díaz accedió y además, acordó pagar al licenciado Santos Sifonte, la cantidad de $575.00 [9] como honorarios.

Pasado un tiempo, el licenciado Santos Sifonte le informó al señor Francisco A. Quiles y su esposa, que no había podido completar el trámite, ya que el Lic. Nazario Díaz le había informado que no tenía el certificado de defunción, de nacimiento, y matrimonio, documentos

---

[9] Carta del 31 de enero de 2006, del Lic. Nazario Díaz al señor Francisco A. Quiles.

necesarios para radicar la petición de declaratoria de herederos.

A la luz de éste trasfondo fáctico debemos resolver si el Lic. Nazario Díaz incurrió en las faltas imputadas, es decir, si infringió el Artículo 2 de la Ley Núm.75, Ley de Notarial de 1987, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

III

Cargo I

El Artículo 2 de la Ley de Notarial de 1987, Ley Núm. 75 del 2 de julio de 1987, dispone en lo pertinente lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar <u>fe y autenticidad conforme a las leyes de los negocios jurídicos</u> y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública al notario es plena, respecto a los hechos que, en el ejercicio de su función, personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.[10] (Subrayado nuestro).

El notario es custodio de la fe pública y al autorizar un documento, está dando fe del mismo, por tanto debe cerciorarse de que ese instrumento público cumple con todas las formalidades de la ley, de que es legal y

---

[10] 4 L.P.R.A. sec. 2002.

verdadero y de que se trata de una transacción legítima y válida[11]. Por la esencia pública de su función, los notarios son llamados a ser sumamente cautelosos en el ejercicio de su práctica, conscientes a toda hora de las consecuencias funestas que podría tener su negligencia sobre los negocios jurídicos en que se involucran[12]. Es la condición de certeza y confianza de las actuaciones del notario lo que le brinda eficacia y garantía al documento notarial, y por ello es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial[13].

No se requiere que un notario falte a la verdad intencionalmente para omitir su deber con la fe pública y a los Cánones de Ética Profesional; más bien puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario o de una confianza desmesurada en las manifestaciones de otros compañeros de profesión[14].

En lo que respecta a este cargo, el Procurador General y la Comisionada Especial concurren en que el querellado no podía otorgar una escritura de compraventa de una propiedad, que no constaba inscrita a nombre de uno de los

---

[11] In re: Vera Vélez, 148 D.P.R.1 (1999).

[12] In re: Rodríguez Báez, 129 D.P.R.819 (1992).

[13] Íd.

[14] Íd.

vendedores, sin que antes se hubiera declarado heredero de dicha propiedad al referido vendedor.

En adición, determinaron que el querellado sabía o debió saber que el vendedor, el señor Pablo Torres Figueroa, no tenía el título de la propiedad objeto de la compraventa inscrito a su nombre pues no había una resolución judicial que lo reconociera como tal. No tenía capacidad legal para enajenar el título de la propiedad inscrito a nombre de su padre ya fallecido.

Cargo II

El Canon 18 de Ética Profesional[15], entre otras cosas **obliga a todo abogado a defender los intereses de su cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica estima adecuada y responsable.**

La referida norma ética, prescribe y enfatiza la necesidad de que los abogados empleen toda su habilidad y conocimiento de forma tal, que su actuación en la gestión a la que se comprometió, no repercuta en perjuicio de los mejores intereses de su cliente, ya sea por descuido, negligencia o dilación indebida en los trámites de su caso[16]. A pesar de que este canon menciona esta labor idónea en relación al cliente, reiteradamente hemos

---

[15] 4 L.P.R.A. Ap.IX C.18. Competencia del abogado y consejo al cliente.

[16] In re:Marrero Figarella, 146 D.P.R.541(1998).

interpretado que el mismo aplica a la labor del abogado notario, ya que el notario, como abogado, está obligado por los Cánones de Ética Profesional[17].

Un abogado que acepta un caso y luego no demuestra la competencia y diligencia que exige el ejercicio de la abogacía, incurre en una violación seria a la ética profesional[18]. Es deber del abogado el cumplir con el principio de diligencia que ha de caracterizar la profesión jurídica y evitar toda indiferencia, desidia, preocupación o displicencia en el desempeño de su profesión[19]. En In re Cardona Ubiñas[20], resolvimos que el abogado que no informa a su cliente de los problemas con una escritura y dicha falta de comunicación resulta en gastos adicionales para el cliente falta a sus deberes notariales.

En adición, el deber de desempeñarse en forma capaz y diligente, le impone al notario la obligación de hacerles a las partes todas aquellas explicaciones, aclaraciones y advertencias necesarias a los fines ilustrar y explicarles todas las situaciones envueltas en la transacción[21]. Sobre

---

[17] In re:Cardona Ubiñas, 156 D.P.R.340 (2002); In re: Igartúa Muñoz, 153 D.P.R.315(2001).

[18] In re: Arroyo Rivera, 148 D.P.R.354 (1999).

[19] In re: Arana Arana, 112 D.P.R. 838 (1982).

[20] 156 D.P.R.340 (2002).

[21] In re: Jiménez Brackel, 148 D.P.R.287 (1999).

el particular hemos enfatizado que, la responsabilidad de un notario es personal, indivisible, e indelegable.

Finalmente, la función del notario trasciende el acto externo de la legalización de una firma[22]. Presupone la creación de un nivel de entendimiento y comunicación entre el fedante y los otorgantes[23]. El notario, como principal instrumento de la fe pública, tiene la indeclinable obligación de propiciar y cerciorarse de ese estado de conciencia informada en su cliente para obtener el consentimiento integrado de los otorgantes al acto notarial[24].

En lo que respecta a dicha norma ética, el Procurador General, alegó que las actuaciones del querellado al otorgar la escritura denotaron una clara falta de diligencia al ejercer su función notarial. Concluyó, que éste se limitó al acto de legalizar las firmas de los otorgantes y que aún cuando el querellado no se comprometió con sus clientes a presentar la escritura de compraventa al Registro de la Propiedad, era su deber explicarles y orientarles a cerca de los documentos necesarios para su inscripción. Además, expresó que el querellado faltó a su deber de diligencia al negarse a corregir las deficiencias señaladas por el Registrador de

---

[22] In re: Meléndez Pérez, 104 D.P.R. 775-776 (1976).

[23] Íd.

[24] Íd.

la Propiedad cuando la Lic. Pérez Torres así se lo comunicó.

La Comisionada Especial en su informe concluyó que, el Lic. Nazario Díaz, no defendió los intereses de su cliente empleando la mayor capacidad, lealtad, responsabilidad y honradez que dicho canon requiere. Le imputó falta de estudio y conocimiento sobre la ley aplicable a la situación que le plantearon sus clientes, es decir el requisito de la previa inscripción o el tracto sucesivo contenido en la Ley Hipotecaria[25]. El mismo, exige que para registrar documentos por los que se declaren, transmitan, graven, modifiquen o extinguen el dominio y demás derechos reales sobre bienes inmuebles debe constar previamente registrado el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos. Asimismo, indicó que el Lic. Nazario Díaz, debió conocer y orientar a sus clientes sobre lo dispuesto en el Reglamento para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, en cuanto a los requisitos para la inscripción del derecho hereditario[26].

---

[25] Artículo 57 de la Ley Hipotecaria, 30 L.P.R.A. Cap.III, sección 2260.

[26] Artículo 50.2 del Reglamento general para la ejecución de la Ley Hipotecaria y del Registro de la Propiedad: "Será necesaria para la registración del derecho hereditario la presentación de la determinación judicial donde se declare la fecha del fallecimiento, estado civil del causante, a la fecha y la existencia de los herederos,

Finalmente, enfatizó que transcurrieron varios años sin que el Lic. Nazario Díaz le diera seguimiento al asunto de manera que pudiera inscribirse la escritura de compraventa en el Registro de la Propiedad.

Cargo III

El Canon 35 de Ética Profesional[27], entre otras cosas, dispone que **el abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar affidávit u otros documentos, y al presentar causas.**[28]   En In re Aponte Berdecía[29], expresamos que cuando un notario viola la fe pública notarial, al no exponer la veracidad de unos hechos, automáticamente incumple con las disposiciones de éste canon.

---

o el testamento debidamente certificado por el Registro de Poderes y Testamentos acompañado del certificado de defunción del testador".

"En todo caso los interesados, sus mandatarios o sus representantes acompañaran con los títulos a inscribirse una instancia en la cual describirán las fincas o derechos pertenecientes al causante y se informará el número de finca con que aparezcan inscritos, así como folio y tomo. La instancia deberá estar suscrita ante el notario en todos los casos excepto cuando el abogado la suscriba.  De la determinación judicial o de la instancia presentada surgirán las circunstancias personales de los herederos".

"Tanto en la herencia testada como en la intestada deberá presentarse junto con la instancia la certificación del Departamento de Hacienda sobre el relevo de gravamen de contribución sobre herencia o la autorización para realizar la transacción".

[27] 4 L.P.R.A. Ap.IX, C.35. Sinceridad y Honradez.

[28] *Íd.*

[29] 161 D.P.R.94 (2004).

Se preceptúa además, que **no es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad y que no se debe inducir al juzgador a error utilizando artificios  o una falsa relación de los hechos o el derecho.**[30] Dicho precepto le impone a todo abogado unas normas mínimas de conducta, indispensables para promover el honor y la dignidad de la profesión[31].

De conformidad con tales postulados éticos, hemos señalado que el abogado no puede proveer al tribunal información falsa o que no se ajuste a la verdad, ni puede tampoco ocultarle información certera que deba ser revelada[32]. Por ende, ante una imputación de violación al Canon 35, *supra*, no es defensa el que no se haya obrado de mala fe o deliberadamente, ni con la intención de engañar o defraudar.  Tampoco importa que no se haya causado daño a tercero[33].

Sobre este cargo, el Procurador General y la Comisionada Especial concluyeron que el querellado faltó a la sinceridad al otorgar una escritura de compraventa en la que dio fe de que el vendedor, señor Pablo Torres Figueroa, era el único y universal heredero del dueño de

---

[30] 4 L.P.R.A. Ap. IX C.35.

[31] In re: López de Victoria I, 163 D.P.R. 1 (2004); In re: Collazo Sánchez, 159 D.P.R. 769 (2003); In re: Montañez Miranda, 157 D.P.R. 275(2002); In re: Curras Ortíza, 141 D.P.R.399 (1996).

[32] In re: Filardi Guzmán, 144 D.P.R. 710 (1998).

[33] In re: Astacio Caraballo, 149 D.P.R.790 (2000).

la propiedad, ya fallecido señor Jorge Torres Febo, sin tener en su poder copia de la resolución sobre la declaratoria de herederos que así lo certificara. A su vez, concluyeron que el Lic. Nazario Díaz, faltó a la sinceridad y honradez al no explicar a los comparecientes que no podía otorgarse la escritura de compraventa hasta que hubiese una resolución judicial sobre declaración de herederos y se completara el trámite ante el Departamento de Hacienda.

Se le imputó una violación a las disposiciones contenidas en el Canon 35, *supra*, toda vez que el contenido de la escritura de compraventa <u>no se ajustó a la veracidad de los hechos al momento de su otorgación</u>.

### Cargo IV

El Canon 38 del Código de Ética Profesional[34] le exige a todo abogado **el deber de esforzarse, al máximo de su capacidad, en la exaltación del honor y de la dignidad de la profesión, aunque el así hacerlo conlleve sacrificios personales**. Asimismo, dicho canon le impone **la responsabilidad de evitar hasta la apariencia de conducta profesional impropia**.

La apariencia de conducta impropia claramente tiene un efecto dañino sobre la imagen, confianza, y respeto de la ciudadanía hacia la profesión, igual que lo tiene la

---

[34] 4 L.P.R.A. Ap.IX C.38.Preservación del honor y dignidad de la profesión.

verdadera "impropiedad ética"[35]. Distinto quizás a otras profesiones, dicha práctica conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y ejemplo.[36] Por ello, al interpretar este canon hemos señalado que la apariencia de conducta impropia puede resultar muy perniciosa al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados.[37]

En repetidas ocasiones, este Tribunal ha advertido que por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen.[38] El abogado tiene el deber de lucir puro y libre de influencias extrañas a su gestión profesional y, en el descargo de sus responsabilidades profesionales, debe cuidar que sus actuaciones no den margen a la más leve sospecha de que promueve intereses suyos encontrados con los de su cliente.[39] Ello implica que todo abogado tiene el deber de desempeñarse con

---

[35] *Íd.*

[36] In re: Cuyar Fernandez, 163 D.P.R 113(2004); In re: Cintrón Colón, 161 D.P.R.778(2004); Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599,613 (1993).

[37] In re: Rivera Vicente, *supra*; In re: Fernández de Ruiz, 167 D.P.R. ____; 2006 T.S.P.R 73.

[38] In re: Ortiz Brunet, 152 D.P.R. 542, 556 (2000); In re: Silvagnoli Collazo,154 D.P.R. 533(2001).

[39] In re: Morell, Alcover, 158 D.P.R.791 (2003).

dignidad y alto sentido del honor y aunque ello conlleve ciertos sacrificios personales, deberá conducirse en forma digna y honorable, tanto en la vida privada como en el desempeño de su profesión.[40]    Sobre este canon y en relación a la conducta de los notarios, en In re: Torres Olmedo[41], expresamos que otorgar un documento notarial en violación de la Ley Notarial de Puerto Rico constituye una violación a éste precepto ético.

La Comisionada Especial luego de examinar la evidencia documental y el Informe remitido por el Procurador General, concluyó que, en efecto, la conducta del Lic. Nazario Díaz no se ajustó a las exigencias contenidas en el Canon 38, supra. Asimismo, expresó que no encontró prueba alguna capaz de sostener que otro abogado estaba gestionando el trámite sobre declaración de herederos, según argumentó el Lic. Nazario Díaz en su contestación a la querella presentada en su contra. La única evidencia sobre contrato anterior con otro abogado se refiere al Lic. Skerrett, quien no cumplió con su encomienda, siendo éste el motivo por el cual los querellantes llegan a la oficina del Lic. Nazario Díaz.

Al respecto señaló que, de haber sido cierta ésta información, el Lic. Nazario Díaz, debió procurar conocer el nombre del abogado que tramitaba el asunto y asegurarse

---

[40] In re: Quiñones Ayala, 165 D.P.R. ___, 2005 T.S.P.R. 99.

[41] 145 D.P.R.384 (1998).

de la etapa en la que se encontraba el procedimiento sobre declaratoria de herederos.

Debido a que no existía documento legal alguno que declarase al señor Pablo Torres Figueroa como único heredero fue incorrecto declararlo así en un documento público. Esta conducta, la ausencia de advertencias, como las omisiones en el cumplimiento de sus deberes como notario constituyeron conducta impropia.

IV

A la luz de los postulados éticos antes esbozados, resolvemos lo planteado en el presente procedimiento disciplinario. Veamos.

El notario puertorriqueño no sólo está obligado por los preceptos de la Ley Notarial y su Reglamento, sino también, como abogado, por los Cánones de Ética Profesional[42]. Cuando un notario no cumple con las obligaciones y deberes que le impone la ley y el ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la fe pública en él depositada[43]. En este sentido hemos resuelto que otorgar un documento notarial en contravención con nuestra Ley Notarial, constituye una violación a los Cánones 35 y 38 del Código de Ética Profesional, *supra*.

---

[42] In re: Santiago Méndez, 151 D.P.R. 568 2000).

[43] In re: Charbonier Laureano, 156 D.P.R. 575(2002); In re: Capestany Rodríguez, 148 D.P.R. 728 (1999).

En el caso que hoy nos ocupa, el Procurador General y la Comisionada Especial señalaron que el Lic. Nazario Díaz, incurrió en conducta violatoria al Artículo 2 de la Ley de Notarial, *supra*, y los Cánones 35, 38 y 18 del Código de Ética Profesional, *supra*. En esencia, concluyeron que el querellado faltó a la verdad de los hechos al otorgar una escritura de compraventa y afirmar que uno de los vendedores era el propietario a titulo de herencia, sin constar ante sí una resolución judicial que lo reconociera como tal.

Al respecto conviene tener presente que faltar a la verdad de los hechos, es una de las faltas más graves que un notario, como custodio de la fe pública, puede cometer[44]. La fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial[45].

El sistema notarial y la fe pública de nada valdrían sin la presunción de que el notario, depositario de ésta, actuará conforme a sus obligaciones ético-legales[46]. En virtud de ello, el Estado le confiere a un documento autorizado por un notario una presunción de credibilidad y certeza de que lo afirmado en el mismo es cierto, correcto

---

[44] In re: Vargas Hernández, 135 D.P.R. 603 (1994).

[45] In re: Collazo Sánchez, 159 D.P.R. 769(2003).

[46] In re: Feliciano Ruíz, 117 D.P.R.269 (1986), citando a A. Neri, Tratado teórico y práctico de derecho notarial, Buenos Aires, Ed. Depalma, 1969, Vol.I, pág. 443 *et seq*.

y concuerda con la realidad[47]. Por ende, un documento autorizado por un notario asegura que es legal y verdadero, y que se trata de una **transacción válida y legítima**[48]. Esta responsabilidad exige que, el notario, como profesional del derecho, conozca las leyes, la doctrina, las costumbres y la jurisprudencia[49].

Fue un hecho probado que al momento en que el Lic. Nazario Díaz otorgó la escritura, la propiedad objeto de la compraventa **no constaba inscrita a nombre de uno de los vendedores**. Los **dueños registrales** de la misma lo eran la señora Aurelia Velásquez Rivera y su fallecido esposo, el señor Jorge Torres Febo. Sin embargo, el querellado afirmó en dicho documento, que el señor Pablo Torres Figueroa, hijo del fenecido señor Jorge Torres Febo, comparecía en **calidad de dueño y como único heredero universal** [50]. Subsiguientemente, dio fe de que […]"*los comparecientes tenían la **capacidad legal** para otorgar la escritura de compraventa*"[…] pero sin tener ante sí la resolución judicial que lo acreditara [51]. Asimismo, expresó que los vendedores adquirieron la propiedad conforme al

---

[47] *Íd.*

[48] *Íd.*

[49] *Íd* citando a <u>Goenaga v. O´neill de Milán</u>, 85 D.P.R.170 (1962).

[50] Escritura de compraventa otorgada ante el licenciado Nazario Díaz, página número uno (1). Exhibit IV.

[51] Escritura compraventa otorgada por el licenciado Nazario Díaz, página tres (3). Exhibit IV.

contenido de una escritura del año 1977, lo cual no es correcto, ya que fue el causante y no el compareciente quien adquirió la propiedad de esa forma[52]. En adición, el querellado señaló que […] *"los compradores, sin más requisito que el presente otorgamiento, entran en la inmediata posesión real y pacífica del inmueble, que adquieren en este acto, a titulo de dueños, quedando expresamente autorizados para realizar actos en tal calidad"*[53].

En la escritura de compraventa no consta advertencia o condición alguna referente a que dicho acto estuviese sujeto a la resolución judicial sobre la declaración de herederos.

¿Podemos avalar esta conducta? La respuesta es en la negativa. Como bien indicó el Informe de la Comisionada Especial, tales expresiones no responden a la realidad del momento del otorgamiento de la escritura de compraventa ni a las normas jurídicas establecidas.

Nótese que en la situación que nos ocupa lo correcto era esperar la resolución judicial en la cual se

---

[52] Escritura compraventa otorgada por el licenciado Nazario Díaz, página tres (3). No surge del Registro de la Propiedad que el compareciente hubiera adquirido la propiedad que aún aparecía inscrita a nombre del causante. Es inevitable concluir que esto era de conocimiento del querellado, ya que en la página cuatro (4) de la escritura expresó tener una certificación del Registro de la Propiedad, la cual utilizó como estudio registral.

[53] Escritura de compraventa otorgada por el licenciado Nazario Díaz, página 5, párrafo tercero.

declarara, sin lugar a duda, su carácter de heredero universal. El análisis efectuado refleja que la actuación del querellado no es compatible con el deber que tiene todo notario de cerciorarse de la capacidad de los otorgantes para que del instrumento surja plena eficacia legal.

Entre los deberes principales que posee un notario al autorizar una escritura de compraventa se encuentra, entre otros, **investigar ciertos hechos y datos de los que depende la eficacia y validez del negocio**, darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio[54].

Se colige de lo anterior que la preparación técnica que la ley exige al notario, así como los deberes que le impone al redactar una escritura pública, permiten obtener la seguridad relativa, pero suficiente para la vida jurídica, de que el negocio en ella recogido es válido y legal e incluso permiten reconocer al sujeto de aquél la titularidad de los derechos que de dicho negocio se deriven[55].

El Lic. Nazario Díaz no podía redactar la escritura de compraventa a base de las declaraciones de los

---

[54] Pedro Avila Alvarez, Estudios de Derecho Notarial, Quinta Edición, Editorial Montecorvo, S.A. (1982).

[55] Íd a la pág. 77.

otorgantes simplemente.  Tenía el deber de corroborar y pasar juicio sobre la titularidad y por ende, capacidad legal del vendedor para disponer del bien inmueble en cuestión.  Sabido es que, en ausencia de testamento, será el **titulo hereditario**, **la resolución judicial sobre declaratoria de herederos**, **acreditada mediante copia debidamente certificada**.

De conformidad con los principios de hermenéutica legal no podemos refrendar la actuación del querellado, ni su posición referente a que el compareciente es quien determina si es o no el dueño de la propiedad a los fines de su comparecencia en el documento público. El querellado en su réplica a la querella del Procurador General, arguyó que las personas se convierten en herederos automáticamente, con el derecho a disponer de los bienes de la herencia[56]. Tal argumento es errado. Todo notario tiene el deber ineludible de comprobar mediante los documentos acreditativos las facultades del otorgante para obrar en la capacidad que reclama, cumpliendo así con las formalidades requeridas por ley.

Según expresáramos anteriormente, tanto el Artículo 2 de la Ley Notarial, *supra*, como el Canon 35 del Código de Ética Profesional, *supra*, imponen a los abogados un deber de sinceridad y honradez que se materializa al redactar una declaración jurada u otros documentos y defender las

---

[56] Réplica al Informe del Procurador General, Anejo I.

causas. En esta línea, hemos determinado que las obligaciones consagradas por tal norma ética constituyen pautas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión[57]. El compromiso de un abogado con la verdad debe ser incondicional[58]. En consecuencia, se infringe el Canon 35, *supra*, con el simple hecho objetivo de faltar a la verdad independientemente de los motivos para la falsedad[59].

De igual forma, en lo concerniente al Canon 38 del Código de Ética Profesional, *supra*, resulta forzoso concluir que el Lic. Nazario Díaz violó sus disposiciones, según le fue imputado en la querella del Procurador General. El querellado no se desempeño en la gestión encomendada, con la cautela y el celo que demanda la función pública del notariado. Al ser informado de que la escritura no pudo ser inscrita, tampoco procuró tramitar y atender con la urgencia y diligencia necesarias la declaratoria de herederos pendiente de sus clientes.

El principio de apariencia y el deber general de los abogados de esforzarse al máximo en la exaltación del honor y la dignidad de su profesión, tiene que sostenerse sobre la impresión que se le da a un observador razonable

---

[57] In re: Ortíz Martínez, 161 D.P.R. 572 (2004).

[58] In re: Hernández Rosario, 2007 T.S.P.R. 34, 170 D.P.R.___.

[59] In re: Fernández Ruíz, 2006 T.S.P.R.73, 167 D.P.R.___ (2006).

de la violación efectiva de los Cánones de Ética Profesional[60]. Ciertamente, en el presente caso, la conducta del querellado constituyó en la **realidad y en la apariencia**, una impropia conforme al Canon 38, *supra*.

En atención a la violación del Canon 18, *supra*, imputada contra el Lic. Nazario Díaz cabe señalar que, la actuación del querellado repercutió en perjuicio de los intereses de sus clientes, el señor Francisco A. Quiles y su esposa, la señora Aurelia Velásquez. Teniendo en cuenta que el propósito para el cual fue contratado era <u>otorgar la escritura de compraventa y lograr la inscripción que el licenciado Skerrett nunca realizó</u>, el Lic. Nazario Díaz, debió conocer que previo a la compraventa debía solicitarse en el Registro de la Propiedad, la inscripción del bien inmueble o derecho real a favor de los herederos mediante la presentación del titulo donde conste el derecho hereditario[61]. Esto es, la presentación de la resolución judicial donde se declarara, entre otras cosas, el derecho hereditario y sus circunstancias personales. Además, junto con esto, la

---

[60] <u>In re: Sepulveda Girón</u>, 155 D.P.R. 345 (2001).

[61] 30 L.P.R.A. sec. 2260, Ley Hipotecaria de Puerto Rico y Artículo 71.1 del Reglamento general para la ejecución de la Ley Hipotecaria y del Registro de la Propiedad.

certificación del Departamento de Hacienda sobre el relevo de gravamen de contribución sobre caudal relicto[62].

No surge del expediente que esta necesidad fuese atendida diligentemente por el querellado. Dicho canon exige al abogado el deber de desempeñarse en forma capaz y diligente, es decir poniendo toda su capacidad y cuidado para ejecutar y conseguir con los medios lícitos su encargo. Coincidimos con el criterio de la Comisionada Especial de que al querellado le faltó estudio y conocimiento sobre la ley aplicable a la situación que sus clientes venían confrontando años atrás y, por ende, no defendió los intereses de sus clientes con la mayor capacidad, lealtad y honradez que el Canon 18, *supra*, exige.

En el presente caso, tras un examen del informe preparado por la Comisionada Especial y la prueba del expediente, no encontramos razón por la cual debamos intervenir con sus conclusiones. Una vez más reiteramos la trascendencia de la función del notario en la esfera privada y profesional que requiere suma diligencia y celo profesional de quien la ejerce en Puerto Rico[63]. La amplitud o lo limitado de la práctica de un notario no debe incidir con la cautela, esfuerzo, tesón y cuidado con que se debe ejercer la misma y con el cabal cumplimiento

---

[62] Artículo 50.2 del Reglamento general para la ejecución de la Ley Hipotecaria y del Registro de la Propiedad.

[63] In re: Cruz Ramos, 129 D.P.R. 377 (1991).

de las obligaciones y deberes que le imponen al notario la ley y los Cánones de Ética Profesional[64].

V

Por los fundamentos que anteceden, resolvemos que el licenciado Nazario Díaz violó el Artículo 2 de la Ley de Notarial de 1987 y los Cánones 18, 35, y 38 del Código de Ética Profesional. En vista de ello, se suspende por el término de seis (6) meses del ejercicio de la abogacía y la notaría, apercibiéndole al querellado del deber de cumplir a cabalidad, en adelante, con los Cánones de Ética que rigen la profesión de abogado y la Ley Notarial de Puerto Rico y su Reglamento.

---

[64] *Íd.*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos J. Nazario Díaz

CP-2006-20

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 2008.

Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que el licenciado Nazario Díaz violó el Artículo 2 de la Ley de Notarial de 1987 y los Cánones 18, 35, y 38 del Código de Ética Profesional. En vista de ello, se suspende por el término de seis (6) meses del ejercicio de la abogacía y la notaría, apercibiéndole al querellado del deber de cumplir a cabalidad, en adelante, con los Cánones  de Ética que rigen la profesión de abogado y la Ley Notarial de Puerto Rico y su Reglamento.

Notifíquese personalmente al señor Carlos J. Nazario Díaz con copia de la Opinión que antecede y de esta sentencia.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo