*In re* DOMINGO COLLAZO SÁNCHEZ, querellado.

*Número:* CP-2002-9          *Resuelto:* 30 de junio de 2003

*Roberto Sánchez Ramos*, procurador general, *Héctor Clemente Delgado*, subprocurador general interino, *Cynthia Iglesias Quiñones*, procuradora general auxiliar, y *Vanessa Lugo Flores*, subprocuradora general; *Magalie Hosta Modestti*, comisionada especial; *Domingo Collazo Sánchez, pro se*; *Irving K. Hernández Valls*, abogado del querellado.

PER CURIAM: En este caso nos corresponde dilucidar si el Lic. Domingo Collazo Sánchez incurrió en conducta profesional antiética al otorgar las Escrituras Núms. 47 y 48 de

5 de septiembre de 1980, y dar fe en ellas de un hecho que le constaba que era falso.([1])

# I

El 27 de septiembre de 2000, las señoras Sara Piñero Márquez y Denise Sánchez Pimentel presentaron sendas quejas contra el licenciado Collazo Sánchez ante este Tribunal.([2]) Mediante éstas, ambas se quejaron de la conducta profesional del licenciado en su desempeño como notario público al autorizar las Escrituras Núms. 47 y 48 de 5 de septiembre de 1980.([3]) Alegaron que el licenciado incurrió en conducta profesional antiética al otorgar las mencionadas escrituras debido a que la parte que compareció como compradora y deudora no era la parte con genuino interés en adquirir la propiedad objeto de las escrituras. Alegaron que las escrituras eran simuladas, por lo que el querellado dio fe de un hecho que le constaba que era falso, faltando a su deber de honradez y sinceridad, en violación al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Los hechos, en síntesis, fueron los siguientes.

En 1980, el licenciado Collazo Sánchez otorgó la Escritura Núm. 47, en la que hizo constar que la señora Sánchez Pimentel le compró al matrimonio Carmona-Quiñones una propiedad ubicada en la urbanización Alturas de Río Grande por la suma de cuarenta y cinco mil seiscientos dólares. El notario querellado dio fe, en esa escritura, de que en el acto de la firma del documento la compradora entregó a los vendedores la suma de quince mil dólares, y que el balance del precio de venta se retuvo para el pago en su día del gravamen hipotecario.

---

([1]) El Lic. Domingo Collazo Sánchez fue admitido al ejercicio de la abogacía el 26 de noviembre de 1965, y al ejercicio de la notaría el 14 de diciembre de ese mismo año.

([2]) La señora Piñero Márquez era tía política de la señora Sánchez Pimentel al momento de los hechos, y hasta que se decretó el divorcio de la primera.

([3]) Las dos quejas fueron posteriormente consolidadas.

Ese mismo día, mediante la Escritura Núm. 48, se constituyó una hipoteca sobre la propiedad objeto de la referida compraventa para garantizar el pagaré de quince mil dólares que vencía con su presentación. No obstante lo consignado en dichas escrituras, los verdaderos compradores de la propiedad era el matrimonio compuesto por la señora Piñero Márquez (una de las aquí querellantes) y su esposo el señor Velázquez Mojica, hecho que le constaba al notario aquí querellado. El matrimonio Velázquez-Piñero deseaba que la propiedad figurara a nombre de la señora Sánchez Pimentel, sobrina del señor Velázquez Mojica, toda vez que el crédito del matrimonio Velázquez-Piñero estaba seriamente afectado, por lo que temían que no cualificaran para asumir la deuda hipotecaria sobre la propiedad objeto de la venta.

El matrimonio Velázquez-Piñero y la señora Sánchez Pimentel acordaron que cuando el matrimonio resolviera sus problemas económicos pasarían la propiedad a nombre de ellos.

Luego de los trámites de rigor y de una exhaustiva investigación, el Procurador General presentó una querella contra el licenciado Collazo Sánchez, en la que se le imputaron los cargos siguientes:

EL LIC. DOMINGO COLLAZO SÁNCHEZ FALTÓ A LA FE NOTARIAL CUANDO A SABIENDAS DE QUE LA PARTE QUE COMPARECIÓ COMO COMPRADORA Y DEUDORA RESPECTIVAMENTE EN LAS ESCRITURAS NÚM. 47 Y 48 DE 5 DE SEPTIEMBRE DE 1980, NO ERA LA PARTE CON GENUINO INTERÉS DE ADQUIRIR EN CALIDAD DE DUEÑA LA PROPIEDAD OBJETO DE LAS MISMAS.
EL LIC. DOMINGO COLLAZO SÁNCHEZ INCURRIÓ EN CONDUCTA PROFESIONAL CONSISTENTE EN FALTAR A SU DEBER DE SINCERIDAD, EN VIOLACIÓN AL CANON 35 DE LOS DE ÉTICA PROFESIONAL, 4 L.P.R.A. AP. IX C 35, CUANDO AUTORIZÓ UN DOCUMENTO PÚBLICO EN EL CUAL LE CONSTABA UN HECHO QUE NO ERA VERDAD.

Vista la querella que presentó el Procurador General y

la contestación del licenciado Collazo Sánchez, se nombró una Comisionada Especial para que recibiera la prueba y nos rindiera un informe con sus determinaciones de hecho y las recomendaciones que estimara pertinentes. Examinado ese informe, estamos en posición de resolver.

## II

El Canon 35 del Código de Ética Profesional, *supra*, establece lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> *El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas.* El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable. (Énfasis suplido.)

Como puede observarse, el citado Canon 35 impone al abogado un deber de sinceridad y honradez frente a todos. Véanse, además: *In re Astacio Caraballo*, 149 D.P.R. 790 (1999); *In re Franco Rivera y Masini Soler*, 134 D.P.R. 823 (1993). El referido canon impone a todo abogado unas normas mínimas de conducta, indispensables para preservar el honor y la dignidad de la profesión. Estas normas mínimas se deben observar, no sólo en la tramitación de los pleitos, *sino en todas las facetas que desempeñen los abogados.* Cualquier hecho que un notario asevere en un instrumento público que no concuerde con la verdad, constituye una violación al Canon 35 del Código de Ética Profesional, *supra*, independientemente de si hubo intención

de faltar a la verdad. *In re Tejada Rivera I*, 155 D.P.R. 175 (2001).

■ Por su parte, el Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2002, recoge el principio de la fe pública notarial al disponer lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

■ La fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial. El Estado le confiere al documento que autoriza un notario, bajo su firma, signo, sello y rúbrica, *una presunción de credibilidad y certeza* de que lo afirmado es cierto, correcto y concuerda con la realidad. A tales efectos, este Tribunal ha recalcado que al autorizar un documento, el notario da fe pública y asegura que cumple con todas las formalidades de ley, formal y sustantivamente. Asegura, además, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. Véase *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986). Violentar la función central de custodiar la fe pública constituye una conducta que queda al margen de la ética del notario público porque cuando ésta se quebranta, necesariamente se falta a la verdad de los hechos. S. Torres Peralta, *El Derecho Notarial Puertorriqueño*, Carolina, Pubs. STP, ed. especial, 1995.

■ Cuando un notario hace constar hechos no veraces en una escritura pública, aun cuando no medie intención de faltar a la verdad sino ausencia de diligencia o celo

en la gestión notarial, incurre en falta. Torres Peralta, *op. cit.* El notario, "como depositario de la fe pública —de la confianza de los particulares y del Poder público—, ha de tener un grado de responsabilidad muy considerable". M. Sanahuja y Soler, *Tratado de Derecho Notarial*, Barcelona, Ed. Bosch, 1945, T. I, pág. 340.

▮ En síntesis, nuestro ordenamiento jurídico condena enérgicamente la participación consciente de un abogado, como funcionario o parte, en el asesoramiento, en la redacción o en el otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime esa conducta. Tal conducta es incompatible con la función pública del notario y con las exigencias de veracidad y honestidad que esta función acarrea.

## III

A pesar de que la investigación del Procurador General demuestra serias incongruencias en el testimonio de las quejosas y que la veracidad éstos es altamente cuestionable en cuanto a otros aspectos de las quejas, el propio querellado aceptó su responsabilidad ante los hechos aducidos y cooperó plenamente con la investigación.

Así, no existe controversia en cuanto a que en 1980 el licenciado Collazo Sánchez otorgó una escritura mediante la cual permitió que compareciera como parte compradora una persona que en realidad no era la parte con genuino interés en adquirir el inmueble. Al así hacerlo, dio fe de hechos que le constaban que eran falsos y quebrantó los postulados más fundamentales de la fe pública notarial.

El licenciado Collazo Sánchez no debió autorizar las escrituras en el momento en que conoció que los otorgantes deseaban hacer constar en ellas un hecho que no era cierto. Esto, independientemente de las razones invocadas para ese artificio.

Por otro lado, cabe señalar que el 29 de diciembre de

2002, el licenciado Collazo Sánchez solicitó darse de baja tanto de la abogacía como de la notaría por motivo de un derrame cerebral masivo que lo inhabilitó para continuar practicando sus labores profesionales. Este Tribunal aún no ha aceptado esa renuncia, debido a que estaba pendiente contra él la querella de marras.

Ante tales hechos, y tomando en consideración que el licenciado Collazo Sánchez sufrió un infarto con derrame cerebral masivo que precipitó su retiro de la profesión,[4] y que del expediente del letrado surge que en los treinta y siete años de práctica no ha tenido ningún antecedente disciplinario, la Comisionada Especial recomendó que baste, como única sanción, "la dimanante del trámite aleccionador de la querella".

No obstante la recomendación de la Comisionada Especial, no podemos condonar la participación consciente del licenciado Collazo Sánchez, como funcionario público, en la redacción y en el otorgamiento de documentos con información que le constaba al querellado que era falsa.

Así, habiendo examinado el expediente del licenciado Collazo Sánchez y tomando en consideración los hechos particulares del caso de autos, *resolvemos suspenderlo del ejercicio de la abogacía y la notaría por un período de un mes. Una vez transcurrido dicho término, automáticamente se dará de baja a Collazo Sánchez del ejercicio de la abogacía.*

*Se dictará la sentencia correspondiente.*

---

[4] En diciembre de 2001 el querellado cerró su bufete para acogerse al retiro, aunque continuaba practicando la profesión desde su casa de forma muy limitada. Luego del infarto, cesó por competo sus labores profesionales.