per curiam:
El Ledo. Rafael A. Jorge Peña (en adelante, licenciado Jorge Peña) fue admitido al ejercicio de la abo-gacía el 9 de diciembre de 1970 y prestó juramento como notario el 19 de marzo de 1971.([1]) Por su parte, el Ledo. Daniel Santiago Rojas (en adelante, licenciado Santiago Rojas) fue admitido al ejercicio de la abogacía el 16 de julio de 1998 y prestó juramento como notario el 18 de agosto de 1998.
El 22 de noviembre de 1999, la Sra. Evelyn Mateo Santiago (en adelante, señora Mateo Santiago o quejosa) instó una queja contra los licenciados Jorge Peña y Santiago Rojas, relacionada con unas transacciones realizadas con una parcela de 2.88 cuerdas de terreno, parte de una finca de 11.1053 cuerdas, propiedad de la quejosa. La propiedad está ubicada en el municipio de Humacao. En la Queja AB-1999-141, la señora Mateo Santiago alegó que el licen-ciado Santiago Rojas se apropió e inscribió a su favor esta parcela con el conocimiento de que le pertenecía a ella.
Evaluada la queja instada, el Procurador General pre-sentó una querella sobre conducta profesional contra am-bos letrados. Procedemos a relatar los acontecimientos, se-gún surgen del informe del Comisionado Especial y del expediente sobre la gestión profesional de los licenciados Jorge Peña y Santiago Rojas y que motivaron se presen-tara la queja.
I
Para el 27 de diciembre de 1984, Juan Burgos Maído-nado era dueño en pleno y absoluto dominio de una parti-cipación adquirida a título de herencia de 2.88 cuerdas de *768 terreno de una finca de mayor cabida compuesta de 11.1053 cuerdas, localizada en el barrio Mariana 3 de Humacao.([2]) El 27 de diciembre de 1984, Juan Burgos Maldonado vendió a la quejosa y su entonces esposo, Jesús Burgos Colón,([3]) su participación de 2.88 cuerdas en la finca de mayor cabida. El precio convenido para la compra-venta fue de $10,000.([4]) Este contrato fue otorgado ante el notario aquí querellado, licenciado Jorge Peña.([5])
El mismo día, luego del otorgamiento del contrato, las partes contratantes acordaron que de las hijas del señor Burgos Maldonado regresar a residir en Puerto Rico, los compradores les cederían una porción de 0.88 cuerdas de las 2.88 adquiridas para que construyeran su casa. La se-ñora Mateo Santiago y su entonces esposo, Jesús Burgos Colón, estuvieron de acuerdo con las condiciones del con-trato de compraventa y pagaron el precio de venta conve-nido de $10,000 al vendedor Juan Burgos Maldonado el 2 de enero de 1985.([6])
A tales efectos, el mismo día se redactó una declaración jurada por iniciativa del licenciado Jorge Peña, que fue suscrita por la aquí quejosa, señora Mateo Santiago y su *769 entonces esposo, Jesús Burgos Colón.C[7]) En lo pertinente, se consignó en la declaración jurada lo siguiente:
3. En el mencionado contrato estamos adquiriendo por la suma de $10,000.00 la participación de dicha parte cedente y vendedora de 2.88 cuerdas en una propiedad inmueble consis-tente de una finca de 11.1053 cuerdas localizadas en el Barrio Mariana de Humacao.
5. Que en el referido contrato de Opción de Compra se hace constar que estamos adquiriendo 2.88 cuerdas de la finca principal antes mencionada; por este medio nos obligamos y com-prometemos oportunamente y en su día a segregar 0.88 cuer-das de dicho solar, para traspasar dicho solar segregado a las hijas de la parte cedente y vendedora.
6. Que dicha segregación del solar de 0.88 cuerdas se efectuará si las hijas de la parte cedente y vendedora deciden regresar a Puerto Rico, toda vez que ellas nacieron y se han criado en la ciudad de Milwaukee del estado de Wisconsin. Affidávit Núm. 15,345.
Posteriormente, el 1 de octubre de 1986, la señora Ma-teo Santiago se divorció de su entonces esposo Jesús Bur-gos Colón mediante sentencia emitida en el Caso Núm. RF86-1054, Tribunal de Primera Instancia, Sala Superior de Humacao. En la sentencia de divorcio se dispuso que correspondería a la demandante en este caso y aquí que-josa, señora Mateo Santiago, la referida parcela de 2.88 cuerdas. ([8])
Por otro lado, el vendedor, Sr. Juan Burgos Maldonado, falleció el 5 de enero de 1990 en Milwaukee, Wisconsin. La declaratoria de herederos del Sr. Juan Burgos Maldonado fue tramitada por el querellado licenciado Jorge Peña, emi-tiéndose una resolución por el Tribunal Superior, Sala de Humacao, el 29 de abril de 1991.([9]) En esta se declararon *770 como únicas herederas de ese causante, a sus cinco hijas nombradas Esther, Aida Socorro, Mary, Lucy y Diana, de apellidos Burgos Ríos, y a su viuda Aida Ríos Maldonado en la cuota usufructuaria. ([10])
Luego del fallecimiento del Sr. Juan Burgos Maldonado, su viuda llamó por teléfono a la demandante-quejosa, se-ñora Mateo Santiago, para ofrecerle en venta la participa-ción de 0.88 cuerdas de terreno en la parcela de 2.88 cuer-das que había sido adquirida por esta, la cual entendía le correspondía a sus hijas. Tal proposición fue rechazada por la señora Mateo Santiago, quien le indicó que era dueña de la totalidad de la parcela por haberla comprado a Juan Burgos Maldonado.([11])
Con estos antecedentes y por admisión propia del que-rellado licenciado Santiago Rojas,([12]) como la señora Mateo Santiago se negó a comprar la mencionada participación de 0.88 cuerdas, la viuda del Sr. Juan Burgos Maldonado se comunicó con Daniel Santiago Rojas y se la ofreció en venta.([13]) Finalmente, el 28 de diciembre de 1990, la viuda de Juan Burgos Maldonado, por sí y en representación de sus cinco hijas, y el aquí querellado licenciado Santiago Rojas, suscribieron ante el notario aquí coquerellado licen-ciado Jorge Peña, un contrato de opción([14]) de compra sobre 0.88 cuerdas de terreno que le serían vendidas al quere- *771 liado licenciado Santiago Rojas.([15]) El contrato de opción de compra fue suscrito sin el conocimiento y la participación de la aquí quejosa. En el contrato se hizo constar que las vendedoras eran dueñas en común proindiviso “de una par-ticipación adquirida a título de herencia de su esposo [y padre, respectivamente] fallecido Don Juan Burgos Maído-nado, de punto ochenta y ocho (0.88) cuerdas” en la finca de 11.1053 cuerdas, siendo del conocimiento de ambos quere-llados que ese hecho no era cierto, por cuanto conocían que Juan Burgos Maldonado había vendido a la señora Mateo Santiago la parcela de 2.88 cuerdas que era todo cuanto él había heredado en esa finca.
Conocimiento tenían, además, que todo derecho de las hijas del causante en relación con la parcela de 0.88 cuer-das dependía de que: (a) regresaran a vivir a Puerto Rico; (b) reclamaran esa porción a la señora Mateo Santiago, y (c) esta segregara y traspasara la porción de 0.88 cuerdas. ([16])
Así las cosas, el 31 de octubre de 1991, el licenciado Jorge Peña, en representación de la sucesión de Juan Bur-gos Maldonado, suscribió y presentó una instancia en el Registro de la Propiedad mediante affidávit, ante el nota-rio Alfredo Torres Hernández,([17]) para que se inscribiera en el Registro de la Propiedad a favor de los herederos de Juan Burgos Maldonado la participación que le correspon-día a título de herencia en la finca que se describió en el mismo documento. En la instancia declaró bajo juramento lo siguiente:([18])
“TERCERO: El causante era dueño en común proindiviso *772 con otros herederos, hermanos de dicho causante, de una par-ticipación de una cuarta (1/4) parte o el veinticinco por ciento (25%) sobre la siguiente finca:
“RUSTICA: Parcela de terreno compuesta de 11.1053 cuerdas aproximadamente, localizada en el Barrio Mariana III de Hu-macao, Puerto Rico, en lindes por el Norte, con terrenos de Manuel F. Padilla; por el Sur, con terrenos de Eugenio Maído-nado y Sucesión Burgos; por el Este, con Sucesión Burgos; y por el Oeste, con quebrada que la separa de los terrenos de Ángel Luis León, el E.L.A., Sucesión Santiago Burgos y con terreno de César Maldonado.”
“CUARTO: Por este medio muy respetuosamente me per-mito solicitar del Honorable Registrador de la Propiedad de Humacao, que inscriba a favor de los herederos así declarados del causante la participación o condominio que pertenecía a éste en el inmueble anteriormente descrito, así como a favor de su viuda la cuota viudal usufructuaria que determina la ley sobre dicha participación.” Sentencia del Tribunal de Primera Instancia, pág. 12.
Al tiempo en que el licenciado Jorge Peña juramentó esa instancia, le constaba que a la fecha de la muerte del cau-sante Juan Burgos Maldonado el 5 de enero de 1990 este no tenía participación alguna en la finca, toda vez que se otorgó ante él el Contrato mediante el cual el causante vendió su participación total a la señora Mateo Santiago el 27 de diciembre de 1984.([19])
No conforme con lo anterior, el 23 de junio de 1992, el licenciado Jorge Peña autorizó las Escrituras Núms. 14 y 15, por virtud de las cuales protocolizó unos poderes pre-viamente redactados por este y otorgados ante notario por las hijas del causante en los estados de California y Wisconsin. En estos poderes, las herederas del Sr. Juan Burgos Maldonado declararon bajo juramento tener una participación hereditaria de una cuarta parte (1/4) o un 25% en la finca de 11.1053 cuerdas referida. Además, con-firieron poder a la Sra. Aida Ríos Maldonado —viuda del causante— para adjudicar, adquirir y aceptar, vender, ce *773 der, transferir y traspasar todos los derechos y las acciones que poseían sobre ese inmueble.([20])
Realidad indisputada es que el licenciado Jorge Peña conocía tanto al momento de redactar los documentos para que fueran juramentados en Estados Unidos como al mo-mento de la protocolización de estos, que era falso lo ates-tado por estas en él a los efectos de que hubieran heredado algo de su padre en esa finca. Según determinado, tenían conocimiento ambos querellados que el causante, padre de estas, había vendido su participación a la quejosa, estando limitado en todo caso el interés de sus hijas a recibir de la señora Mateo Santiago una participación de 0.88 cuerdas en la eventualidad de que regresaran a Puerto Rico, lo que no había acontecido.([21])
En igual fecha y mediante Escritura Núm. 16, otorgada ante el notario Jorge Peña, el 23 de junio de 1992, la viuda de Juan Burgos Maldonado, por sí y como apoderada de sus hijas, procedió a segregar de la finca de 11.1053 cuer-das, la parcela de 2.8868 cuerdas. La finca, así segregada —que corresponde a la que adquirió la quejosa quien com-pró del causante — , fue inscrita a favor de los herederos del señor Burgos Maldonado.([22])
A su vez, el mismo día, mediante Escritura Núm. 17 otorgada ante el notario Jorge Peña,([23]) la Sra. Aida Ríos Maldonado compareció nuevamente por sí y en representa-ción de sus hijas. Aunque en el contrato de opción de com- *774 pra, las partes pactaron sobre la transferencia de única-mente 0.88 cuerdas de terreno, en esta ocasión las partes acordaron transferir el dominio de la totalidad de las 2.88 cuerdas por la suma de $10,000. Tanto el notario Jorge Peña como el también querellado licenciado Santiago Rojas conocían la falsedad del contenido de la Escritura Núm. 17.([24]) Esta escritura fue presentada en el Registro de la Propiedad el 29 de diciembre de 1994. Luego del trámite correspondiente, fue inscrita a favor del licenciado Santiago Rojas y su esposa Marina Díaz Delgado. ([25])
Así las cosas, en 1997, la señora Mateo Santiago intere-saba constituir una hipoteca sobre la finca de 2.88 cuerdas que había adquirido del Sr. Juan Burgos Maldonado según determinado, para lo cual buscó asesoramiento legal. En el proceso supo, para su sorpresa, que estaba inscrita en el Registro de la Propiedad a favor del licenciado Santiago Rojas y su esposa. Al requerirle una explicación al licen-ciado Santiago Rojas, este la citó para una reunión en la oficina del licenciado Jorge Peña, a la que asistió, ocasión en que se le entregó copia de la Escritura Núm. 17.
Luego de la reunión sostenida con los querellados, la señora Mateo Santiago interpuso una acción civil sobre la reivindicación en el Tribunal de Primera Instancia, Sala Superior de Humacao.([26]) Luego del correspondiente trá-mite y vista plenaria del caso, el Tribunal dictó sentencia —final y firme— declarando “con lugar” la demanda inter-puesta por la señora Mateo Santiago y “no ha lugar” la reconvención interpuesta por el demandado y aquí quere-llado licenciado Santiago Rojas. Como base para así dicta-minar resolvió, por admisión propia del demandado y aquí *775 querellado licenciado Santiago Rojas, que “éste no solo nunca ha estado en la posesión de la cosa sino que siempre tuvo conocimiento de los defectos en el título de las perso-nas de quienes pretendió adquirir el suyo”, base para con-cluir que no le asiste derecho alguno como poseedor de buena fe.([27])
Además, ese foro determinó que la señora Mateo Santiago era la legítima dueña por adquirir ese inmueble de su otrora titular, Juan Burgos Maldonado de la finca de 2.8868 cuerdas que era objeto de disputa y controversia. Habiendo así dictaminado y figurando esa parcela inscrita en el Registro de la Propiedad a favor de los demandados, el Tribunal de Primera Instancia ordenó la cancelación de la inscripción a favor del hoy licenciado Santiago Rojas y su esposa y la inscripción de la finca, así como la inscrip-ción correspondiente a favor de la señora Mateo Santiago. El Tribunal de Primera Instancia impuso, además, las cos-tas y los honorarios de abogado. Además, el Tribunal de Primera Instancia en su Sentencia apuntó que
... aún cuando los hechos de este caso fueron cometidos por el Ledo. Daniel Santiago Rojas antes que fuera admitido a la práctica de la profesión legal, atendido lo resuelto en In recu-rrido: In re Belén Trujillo, 128 D.P.R. 949, 959 (1991), el Tribunal entiende debe dar conocimiento de los mismos al Honorable Tribunal Supremo a fin de que determine lo que sea procedente respecto de su conducta, así como la del Ledo. Rafael A. Jorge Peña, por lo que se ordena que por la Secretaría de este Tribunal se eleven los autos de este caso al Honorable Tribunal Supremo. Sentencia del Tribunal de Primera Instan-cia, págs. 29-30.
*776 Recibida la referida sentencia por este Foro,([28]) esta constituyó base para una nueva queja contra los licencia-dos Santiago Rojas y Jorge Peña. Esta queja fue consoli-dada con la queja AB-1999-141 instada por la señora Ma-tos por originarse ambas de unos mismos hechos con el número AB-2001-0002.([29])
Evaluada las quejas y examinado el Informe del Procu-rador General sobre el 1 de noviembre de 2002 le ordena-mos presentar las querellas correspondientes. Así, el Pro-curador General presentó querellas sobre conducta profesional contra los licenciados Jorge Peña y Santiago Rojas, en la que imputó violaciones a los Cánones 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([30])
*777 Por su parte, el licenciado Jorge Peña sometió su con-testación a la querella para aducir, en síntesis, que su par-ticipación en los hechos que motivaron la querella instada en su contra se circunscribían exclusivamente a su función como notario por haber redactado y autorizado bajo su fe notarial varios documentos relacionados al negocio entre las partes concernidas. Expresó que lo anterior, a su juicio, era necesario a fin de lograr la inscripción del título de la finca en el Registro de la Propiedad. También adujo que no había ejercido su función notarial con el celo y cuidado que ello requería. De igual manera reconoció que no debió au-torizar la escritura de compraventa al licenciado Santiago Rojas sin la comparecencia de la señora Mateo Santiago.
De la misma forma, el licenciado Santiago Rojas, quien para la fecha cuando acontecieron los eventos no había sido admitido a la profesión de la abogacía, instó su alega-ción responsiva. Esbozó que la conducta alegadamente in-currida por él, así como su omisión de ofrecer información correcta a la Comisión de Reputación de este Tribunal en los trámites realizados para tomar el examen de reválida de abogado,([31]) descansaron en su mejor juicio y a los con-sejos legales de quienes lo asesoraron en todo momento. Sobre este punto, y reconociendo que al informar a la Co-misión de Reputación de este Tribunal señaló que no había sido parte en ningún proceso judicial, cuando lo cierto era que meses antes de suscribir el formulario correspondiente había sido emplazado ya, alegó que no lo incluyó por con-siderar que la pregunta iba dirigida a procedimientos de naturaleza criminal.
Así las cosas, y comenzado el trámite, nombramos al Hon. Angel F. Rossy García como comisionado especial. So-metido el caso ante nuestra consideración, y contando con los escritos que obran en el expediente, incluyendo el In-forme del Comisionado Especial, resolvemos.
*778 rH HH
 Reiteradamente hemos señalado que los Cánones de Etica Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su delicada e importante labor. In re Birriel Cardona, 184 D.P.R. 301 (2012); In re Muñoz, Morell, 182 D.P.R. 738 (2011); In re Torres Viñals, 180 D.P.R. 236 (2010).
El Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. EX, impone a los abogados un deber de sinceridad y honradez ante todos. Dispone:

Canon 35-Sinceridad y honradez

La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
No es sincero y honrado el utilizar medios que sean incon-sistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o fa-cilitar la desaparición de evidencia testifical en un caso tam-bién es altamente reprochable.
Al respecto, reiteradamente hemos expresado que la conducta de un abogado o abogada debe ser sincera y honrada frente a todos y ante todo tipo de acto. In re Pons Fontana, 182 D.P.R. 300 (2011). En esencia, se infringe este deber por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad, pues no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar. In re Nieves Nieves, 181 D.P.R. 25 (2011).
*779 Hemos apuntalado que:
Se infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común, se pretende realizar actos o negocios de trascendencia jurídica. Más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin ella, la profesión jurídica no podría justificar su existencia. In re Montañez Miranda, 157 D.P.R. 275, 281 (2002).
Así hemos indicado que cualquier hecho que un Notario asevere en un documento público que no concuerde con la verdad, constituye una violación al Canon 35 del Código de Etica Profesional, supra, independientemente de si hubo intención de faltar a la verdad. In re Tejada Rivera I, 155 D.P.R. 175 (2001).
El Art. 2 de la Ley Notarial de Puerto Rico recoge el principio de la fe pública notarial. Sobre este particular, ese precepto dispone lo siguiente:
El notario es el profesional del Derecho que ejerce una fun-ción pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos ex-trajudiciales que ante él se realicen, sin perjuicio de lo dis-puesto en las leyes especiales. Es su función recibir e interpre-tar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle [s] au-toridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. 4 L.RR.A. see. 2002.
Hemos señalado que la fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial. In re Collazo Sánchez, 159 D.P.R. 769, 774 (2003). El Estado le confiere a un documento autorizado por un notario una presunción de credibilidad y certeza de que lo afirmado en este es cierto, correcto y concuerda con la realidad. Id. A tales efectos, este Tribunal ha resuelto que al autorizar un documento, el notario da fe pública y *780 asegura que ese documento cumple con todas las formali-dades de ley. El notario asegura, además, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. In re Feliciano Ruiz, 117 D.P.R. 269, 275 (1986).
Como corolario de lo anterior, el notario ejerce una función clave de inestimable importancia en los negocios jurídicos, toda vez que es custodio de la fe pública. Una vez el notario se aparta de cumplir con las obligaciones y los deberes que le impone la ley y el ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública depositada en él. Nuestro ordenamiento jurídico condena enérgicamente la participación consciente de un notario en el asesoramiento, la redacción y el otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime esa conducta. In re Collazo Sánchez, supra, págs. 773-774.
De lo anterior se colige que cualquier hecho aseverado en un instrumento público por un notario que no concuerde con la verdad constituye una violación al Canon 35, supra, independientemente de si hubo intención de faltar a la verdad. In re Torres Villanueva, 168 D.P.R. 185, 191 (2006). Se trata de una violación a la función central de custodiar la fe pública, conducta al margen de la ética del notario público, porque cuando esta se quebranta necesariamente se falta a la verdad de los hechos. In re Collazo Sánchez, supra, pág. 774.
Recapitulando, el Canon 35, supra, obliga a los miem-bros de la profesión legal a observar una conducta impreg-nada de sinceridad y honradez y prohíbe cualquier medio incompatible con la verdad. In re Cuyar Fernández, 163 D.P.R. 113, 117 (2004). Es por ello que condenamos enérgi-camente la participación consciente de un abogado, como funcionario o parte, en el otorgamiento de documentos si-mulados o faltos de veracidad, independientemente del *781 propósito que anime esa conducta. “Tal conducta es incompatible con la función pública del notario y con las exigen-cias de veracidad y honestidad que esta función acarrea”. In re Collazo Sánchez, supra, pág. 775.
Por otro lado, hemos resuelto que el Canon 38 del Código de Etica Profesional, supra, le exige a todo abogado conducirse en forma que exalte la dignidad y el honor de su profesión. Según el propio canon, ello responde a la confianza depositada en el abogado como miembro de la ilustre profesión legal. In re Sepúlveda, Casiano, 155 D.P.R. 193 (2001).
Reiteradamente, al interpretar el precepto, hemos ex-presado que cada abogado es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad y el más escrupuloso sentido de responsabilidad. In re García Aguirre, 175 D.P.R. 433, 440-441 (2009); In re Coll Pujols, 102 D.P.R. 313 (1974).
Asimismo, la Junta Examinadora juega un rol esencial en el proceso de acopio de información. A ella le toca recibir toda aquella información que complementa la solicitud de reválida y que luego se refiere a la Comisión de Reputación de manera que esta pueda llevar su encomienda de evaluar a los aspirantes. In re Reichard Hernández, 180 D.P.R. 604 (2011); In re Sepúlveda, Casiano, supra.
Entre los formularios que cada aspirante tiene que com-pletar se encuentra la “Declaración Informativa”. Hemos expresado que ésta “ ‘sirve, entre otras cosas, para obtener datos que puedan arrojar luz sobre las cualidades morales de cada aspirante’ ”. In re Reichard Hernández, supra, págs. 610-611, citando a In re Sepúlveda, Casiano, supra, y L.M. Negrón Portillo, Ética Profesional, (ed. de autor), Hato Rey, 1993, pág. 2.
Todo aspirante a abogado tiene el deber de ser *782 honesto y sincero en su solicitud de admisión al foro. Este deber incluye, pero no se limita a divulgar toda informa-ción que pueda arrojar luz sobre su carácter y aptitud para ejercer la profesión. En el cumplimiento de esta obligación, todo aspirante debe ser estricto consigo mismo, supri-miendo todo impulso de omitir información y ofrecer infor-mación falsa o engañosa en la declaración informativa. Cualquier incumplimiento con este deber se evaluará como una actuación deshonesta independiente a los hechos o la conducta omitida. In re Reichard Hernández, supra, págs. 612-613 y 618. S. Steidel Figueroa, Ética y responsabilidad disciplinaria del abogado, San Juan, Pubs. JTS, 2010, pág. 69.
En In re Belén Trujillo, supra, nos expresamos sobre la facultad de este Tribunal para investigar y disciplinar a los abogados por actos u omisiones cometidos antes de ser admitidos al ejercicio de la profesión. En lo pertinente, resolvimos que este Tribunal tiene el poder inherente para investigar y determinar si la conducta específica de una persona antes de ser abogado puede ser considerada para removerlo como tal.
Por último, la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, establece que le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Por lo tanto, sus determinaciones tácti-cas merecen nuestra mayor deferencia. Ahora bien, de igual manera hemos resuelto que, aunque este Tribunal no está obligado a aceptar el Informe del Comisionado Especial nombrado para atender una querella contra un abo-gado, pudiendo adoptar, modificar o rechazar tal informe, de ordinario sostenemos las conclusiones de hecho de un Comisionado Especial salvo que se demuestre perjuicio, parcialidad o error manifiesto. In re Torres Viñals, supra.
Con estos preceptos en mente, atendemos la controver-sia ante nuestra consideración.
*783 III
Un análisis de la prueba que fue objeto de estipulación en el caso que nos ocupa, nos lleva a concurrir con el Co-misionado Especial a los efectos de que la conducta reite-rada de los querellados y su proceder los llevó a incurrir en violaciones a los Cánones 35 y 38 del Código de Ética Pro-fesional, supra. En busca de la mayor claridad, examina-mos por separado la conducta de cada uno de los querella-dos, a la luz del Derecho esbozado.
A. Ledo. Jorge Peña
Surge de manera diáfana del expediente el conocimiento que tenía el licenciado Jorge Peña del interés propietario de la señora Mateo Santiago en la parcela de 2.88 cuerdas, por haberse otorgado ante este un contrato de compra-venta, por virtud del cual el Sr. Juan Burgos Maldonado se comprometió a segregar y vender a la señora Mateo Santiago y su entonces esposo esa parcela, correspondiente esta a su participación hereditaria en la finca original. Co-nocimiento tenía, además, del acuerdo alcanzado por las partes en igual fecha mediante el cual los compradores se obligaron a segregar de esa parcela objeto del contrato un solar de 0.88 cuerdas para las hijas del vendedor, condicio-nado a que estas decidieran; acuerdo suplementario que fue por este redactado y luego suscrito ante él mediante Affidávit Núm. 15,345. Finalmente el licenciado Jorge Peña sabía que ese contrato se había consumado, habiendo satisfecho, los compradores el precio total acordado para compraventa de la parcela de 2.88 cuerdas y tomado pose-sión de esta.
Habiéndose desprendido el Sr. Juan Burgos Maldonado de todo interés propietario sobre su participación heredita-ria en la finca, luego de la compraventa a favor de la se-ñora Mateo Santiago y su esposo, falleció el 5 de enero de 1990 en Milwaukee, es decir, aproximadamente seis (6) años luego de haberse consumado la transacción. Con estos *784 antecedentes, el licenciado Jorge Peña, tramitó la declara-toria de herederos del Sr. Juan Burgos Matos, emitiéndose resolución por el Tribunal Superior, Sala de Humacao el 29 de abril de 1991, declarando a sus 5 hijas como únicas he-rederas y a la viuda en la cuota usufructuaria.
Además, el 31 de octubre de 1991, el licenciado Jorge Peña suscribió una instancia mediante el affidávit,([32]) ante el notario Alfredo Torres Hernández, para inscribir en el Registro de la Propiedad la participación que tenían los herederos del Sr. Juan Burgos Maldonado en la finca de 11.1053 cuerdas. Conforme determinó el Comisionado Especial, el licenciado Jorge Peña conocía que, a la fecha de su fallecimiento el señor Burgos Maldonado no tenía interés propietario alguno a esa propiedad, ello luego de haber vendido su participación de 2.88 cuerdas el 27 de diciembre de 1984 a la señora Mateo Santiago y su esposo.
Según determinado, al autorizarse y suscribirse las es-crituras de protocolización de poderes y compraventa, el licenciado Jorge Peña conocía la falsedad del contenido de estas. Implícito en ello, el proceder espurio de este al no dar conocimiento ni participación a la señora Mateo Santiago en total perjuicio y menoscabo de sus derechos e in-tereses sobre esa propiedad. Concluimos, en fin, que las actuaciones del licenciado Jorge Peña constituyen una vio-lación a los Cánones 35 y 38 del Código de Etica Profesio-nal, supra.
B. Ledo. Daniel Santiago Rojas
De otra parte, y según determinado por el Comisionado Especial, el licenciado Santiago Rojas también tenía cono-cimiento de la titularidad de la señora Mateo Santiago so-bre la parcela de 2.88 cuerdas, a quien le hizo un acerca-miento en 1990 para comprarle la finca, pero esta rechazó expresándole que no interesaba venderla.
*785 Luego del fallecimiento del Sr. Juan Burgos Maldonado, su viuda se comunicó con la señora Mateo Santiago para ofrecerle en venta lo que entendía era la participación de sus hijas en la finca, a saber, el solar de 0.88 cuerdas, pro-posición que le fue rechazada de plano, invocando la aquí quejosa su derecho propietario sobre la totalidad de la finca de 2.88 cuerdas. Tal posición de la señora Mateo era también del conocimiento del licenciado Santiago Rojas. Fue en tales circunstancias que la viuda del Sr. Juan Bur-gos Maldonado le ofreció el solar en venta al querellado para discutir y aclarar cualquier extremo relacionado con ese ofrecimiento de venta por parte de la viuda del Sr. Juan Burgos Maldonado.
El licenciado Santiago Rojas conocía la titularidad de la señora Mateo Santiago respecto a la finca de 2.88 cuerdas. Con estos antecedentes y teniendo pleno conocimiento del derecho propietario de la señora Mateo Santiago sobre la totalidad de la parcela de 2.88 cuerdas, el 22 de diciembre de 1990, el licenciado Santiago Rojas suscribió ante el no-tario y aquí querellado, licenciado Jorge Peña, un contrato de opción de compra sobre las 0.88 cuerdas. En este com-pareció como vendedora la viuda de Juan Burgos Maído-nado, por sí y en representación de sus hijas, y se hizo constar que la viuda y sus hijas eran dueñas en común proindiviso de una participación adquirida a título de he-rencia de 0.88 cuerdas de una finca de 11.1053 cuerdas, hecho que ambos querellados tenían conocimiento de su falsedad.
De igual forma, el licenciado Santiago Rojas suscribió las escrituras con pleno conocimiento de la falsedad de su contenido. Con este proceder menoscabó los derechos e in-tereses de la quejosa sobre la propiedad en cuestión. Con-currimos con el Comisionado Especial en que las actuacio-nes del licenciado Santiago Rojas constituyen una violación al Canon 35 del Código de Ética Profesional, supra.
*786 Tampoco podemos ser indiferentes a la violación ética independiente por parte del licenciado Santiago Rojas. El licenciado Santiago Rojas mintió al proveer la información requerida en la declaración informativa requerida a todo aspirante a tomar la reválida de abogado. En particular, en el inciso 2 de la declaración informativa, se le pidió que expresara si figuraba como demandante o demandado en algún procedimiento de naturaleza civil. Aunque este cono-cía para esa fecha de la presentación del caso Núm. HAC1997-0201, toda vez que había sido emplazado, la con-testación del licenciado Santiago Rojas a ese requerimiento fue en la negativa. Así pues, el licenciado Santiago Rojas ocultó esta información para privar a la Comisión de Re-putación de la oportunidad de considerar las alegaciones de la demandante en el referido caso, para el descargo de su encomienda y responsabilidad ministerial. En el caso particular del licenciado Santiago Rojas, su omisión de no suplir información exacta y completa en la solicitud como parte del proceso de evaluación por la Comisión de Repu-tación de Aspirantes al Ejercicio de la Abogacía, alcanza también una infracción al deber de sinceridad y honestidad que rige la profesión de la abogacía. Véase In re Reichard Hernández, supra, págs. 612-613 y 618.
Un análisis y evaluación de la prueba aportada y esti-pulada en el proceso nos mueve a concluir que los licencia-dos Jorge Peña y Santiago Rojas con su conducta y proce-der según consignada, quebrantaron los deberes de respeto, honor y dignidad que todo abogado le debe no solo a las instituciones relacionadas con la administración de la justicia, sino a la sociedad puertorriqueña, violando así los Cánones 35 y 38, supra. La conducta mendaz exhibida por los licenciados Jorge Peña y Santiago Rojas, la impropie-dad de sus acciones, la falta de sinceridad y honradez en perjuicio de los derechos de la quejosa y la justicia, son factores que deben ser considerados en la determinación de la sanción disciplinaria que haya de imponerse.
*787 IV
Resta ahora determinar la sanción que debemos impo-ner a los licenciados Jorge Peña y Santiago Rojas. Para imponer una sanción disciplinaria a un abogado por con-ducta impropia, es necesario considerar el historial previo del abogado; si este goza de buena reputación; la acepta-ción de la falta y su sincero arrepentimiento; si su con-ducta se realizó con ánimo de lucro, y cualquier otro factor pertinente a los hechos. In re Rodríguez Lugo, 175 D.P.R. 1023, 1032 (2009).
En lo atinente al licenciado Jorge Peña, este acreditó mediante una declaración jurada que fue admitido a la profesión de abogado en el 1970, ejerciendo la profesión durante treinta y nueve años, “sin tener problemas ni con-flictos con ningún juez, cliente o compañero abogado”; que renunció a la práctica de la notaría desde 2011;([33]) desde ese mismo año no ha ejercido como abogado. Sometió, ade-más, declaraciones juradas de los Ledos. Reynaldo de León Martínez y José I. Rosa Carromero, así como del Sr. Pedro Miller Sánchez, su vecino, a los fines de establecer que a juicio de estos, el licenciado Jorge Peña “goza de buena reputación en la comunidad humacaeña”.
A la luz de lo anterior, se podría cerrar este capítulo con una censura enérgica. Sin embargo, no podemos seguir este derrotero. Un estudio del expediente revela que ambos licenciados durante el trámite disciplinario estipularon la totalidad de los hechos materiales propuestos por el Procu-rador General en sus escritos ante nos. A su vez, según señalado por el Procurador General, las estipulaciones de las partes quedan suplementadas por las determinaciones de hechos consignadas en la sentencia emitida en el Caso Núm. HAC-199700201.
Hemos revisado la contestación del licenciado Jorge *788 Peña a la querella incoada. En ese escrito, aunque reco-noce que no se debió autorizar la escritura de compraventa sin la comparecencia de la quejosa, hace abstracción de su conocimiento de la realidad jurídica de la titularidad de la parcela de 2.88 cuerdas en controversia y donde la quejosa le pagó al señor Burgos Maldonado, anterior titular de la finca, la suma de $10,000, así como de la falsedad de lo que consignó en el contrato de opción de compra suscrito por el licenciado Santiago Rojas el 22 de diciembre de 1990 y do-cumentos posteriores autorizados por su fe notarial. Ase-veró en esos documentos realidades jurídicas que le cons-taban eran falsas.
En cuanto a lo atinente al licenciado Santiago Rojas, en su contestación a la querella hizo abstracción de su conoci-miento de la falsedad del contenido de los documentos sus-critos por él bajo juramento ante el licenciado Jorge Peña. A su vez, nos preocupa grandemente el constante “patrón de mendacidad” que apunta el Comisionado Especial.
V
Por los fundamentos expresados, suspendemos al licen-ciado Jorge Peña del ejercicio de la abogacía por término indefinido a partir de la notificación de la presente opinión per curiam. El licenciado Jorge Peña tiene el deber de no-tificar a todos sus clientes de su inhabilidad para conti-nuar representándoles y devolverá a estos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizado. Deberá también informar oportu-namente de su suspensión a los foros judiciales y adminis-trativos del país. De igual forma, debe certificar a este Tribunal en el término de treinta días el cumplimiento con lo aquí dispuesto.
Por otra parte, suspendemos al licenciado Santiago Rojas del ejercicio de la abogacía y la notaría por término indefinido, a partir de la notificación de la presente opinión *789 per curiam. El licenciado Santiago Rojas también tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a estos los expedientes de los casos pendientes así como los honora-rios recibidos por trabajo no realizado. Deberá también in-formar oportunamente de su suspensión a los foros judicia-les y administrativos del país. De igual forma, debe certificar a este Tribunal en el término de treinta días el cumplimiento con lo aquí dispuesto.
Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Santiago Rojas y entregarla a la Oficina de la Directora de Inspección de Notaria para la investigación y el informe correspon-dientes.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino.

(1) El 25 de enero de 2011, el licenciado Jorge Peña renunció voluntariamente al ejercicio de la notaría.

(2) Véase la estipulación de hechos consignada en los escritos sometidos por el Procurador General “Sometiendo Hechos Materiales” para el licenciado Jorge Peña, así como aquel sometido en cuanto al licenciado Santiago Rojas, ambos admitidos por estipulación de las partes a todo efecto procesal y evidenciario con el alcance de una estipulación de hechos, así como la Determinación de Hecho Núm. 2 de la sentencia emitida en el Caso Núm. HAC1997-0201.

(3) El Sr. Juan Burgos Maldonado era primo hermano del querellado licenciado Santiago Rojas. El querellado licenciado Santiago Rojas y la aquí querellante Evelyn Mateo Santiago también se conocían ya que este era pariente de su entonces esposo, Jesús Burgos, quien era sobrino de Juan Burgos Maldonado. Véase Estipulación 2 y 3 del escrito sometido por el Procurador General, atinentes al licenciado Santiago Rojas.

(4) Véase la Determinación de Hecho Núm. 4 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como las estipulaciones 3 y 4 del escrito sometido por el Procurador General, atinente al licenciado Jorge Peña, y la estipulación Núm. 5 de aquel referente al licenciado Santiago Rojas.

(5) Afidóvit Núm. 15,344.

(6) Véase la Determinación de Hecho Núm. 9 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como la estipulación 6 del escrito sometido por el Procu-rador General, atinente al querellado licenciado Santiago Rojas.

(7) Affidávit Núm. 15,345.

(8) Véase Determinación de Hecho Núm. 10 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como la estipulación 7 del escrito sometido por el Procu-rador General, atinente al licenciado Santiago Rojas.

(9) Caso Núm. CS91-577.

(10) Véase la estipulación 5 del escrito sometido por el Procurador General, atinente al querellado licenciado Jorge Peña, así como la Determinación de Hecho núm. 13 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

(11) Véase Determinación de Hecho Núm. 14 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

(12) En ocasión de la vista plenaria del Caso Núm. HAC1997-0201.

(13) Según determinado por el Tribunal en este caso, “el demandado (Daniel Santiago Rojas) declaró haberse comunicado con la demandante (Evelyn Mateo Santiago) en alguna fecha que él no puede precisar, pero que fue entre dos (2) semanas y tres (3) meses antes del 28 de diciembre de 1990 y le informó de la oferta de la viuda de Juan Burgos Maldonado, pero que luego de esta comunicación no volvió a comunicarse con la demandante (Evelyn Mateo Santiago) hasta aproximadamente dos (2) semanas antes de que fuera emplazado en el caso el 6 de octubre de 1997”. Sentencia de Primera Instancia, pág. 8. Véase Determinación de Hecho Núm. 15 de la Sentencia emitida en el caso Núm. HAC1997-0201.

(14) Affidávit Núm. 21,429.

(15) Véase las estipulaciones 9 y 10 del escrito sometido por el Procurador, ati-nente al querellado Daniel Santiago Rojas, así como las Determinaciones de Hechos Núm. 16 y 18 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

(16) Affidávit Núm. 15,345.

(17) Afidávít Núm. 16,119.

(18) Véase la estipulación 7 del escrito sometido por el Procurador, atinente al querellado Rafael A. Jorge Peña, así como la Determinación de Hecho Núm. 22 de la sentencia emitida en el caso Núm. HAC1997-0201.

(19) Véase la Determinación de Hecho Núm. 23 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

(20) Véase la Determinación de Hecho Núm. 24 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como la estipulación 8 del escrito sometido por el Procurador General, atinente al querellado licenciado Jorge Peña.

(21) íd.

(22) Inscrita en Registro de la Propiedad, Sección de Humacao, Folio 135 del Tomo 481, Finca Núm. 21,881, Inscripción Primera. Véase determinaciones de hecho 25 a 27 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como la esti-pulación 10 del escrito sometido por el Procurador General, atinente al licenciado Jorge Peña.

(23) Véase las estipulaciones 13, 14 y 15 del escrito sometido por el Procurador General, atinente al querellado licenciado Santiago Rojas, así como las estipulacio-nes 11 y 12 del escrito sometido por el Procurador General, atinente al querellado licenciado Jorge Peña.

(24) Véase la estipulación 12 del escrito sometido por el Procurador General, atinente al querellado licenciado Jorge Peña, así como las estipulaciones 14 y 15 de aquel sometido atinente al licenciado Santiago Rojas.

(25) Inscrita en Registro de la Propiedad, Sección de Humacao, Folio 135 vuelto del Tomo 481, Finca Núm. 21,881. Véase Determinaciones de Hecho núm. 29 y 31 de la Sentencia emitida por el Tribunal en el Caso Número HAC1997-0201.

(26) Caso Civil Núm. HAC-1997-0201.

(27) Véase Sentencia emitida en el caso núm. HAC1997-0201. En cuanto a este extremo dispone el Art. 293 del Código Civil, 31 L.P.R.A. see. 1146, como sigue:
“Es poseedor de buena fe el que posee como propietario por virtud de un título suficiente en sus términos y condiciones para transferir la propiedad y cuyos defectos son ignorados por el poseedor. La posesión de buena fe cesa desde el momento en que el poseedor conoce por sí mismo los defectos del título, o mediante el juicio que estableciere el propietario de la cosa para reivindicarla”.

(28) Dictaminó así que la demandante y aquí señora Mateo Santiago es la dueña legítima de la parcela de 2.88 cuerdas por esta adquirida del Sr. Juan Burgos Maldonado. Además, ordenó al Registrador del Registro de la Propiedad de Puerto Rico, Sección de Humacao, procediera a cancelar en el Registro a su cargo la inscrip-ción a favor de los demandados licenciado Santiago Rojas y su esposa Marina Díaz Delgado, para proceder luego a inscribirla a favor de la demandante y aquí quejosa; impuso las costas del litigio y los honorarios a los demandados, disponiendo final-mente la procedencia de dar conocimiento a este Tribunal de los hechos y la conducta incurrida por el aquí querellado licenciado Santiago Rojas, admitido a la práctica de la profesión legal, luego de acontecer los hechos pertinentes al dictamen emitido, así como aquella incurrida por el licenciado Jorge Peña, según antes determinado.

(29) Presentada la queja, el licenciado Santiago Rojas incoó una contestación. No obstante, el 14 de enero de 2000, el Procurador General presentó un Informe ante este Tribunal, para peticionar la paralización de los procedimientos. Descansó su solicitud en que la controversia que daba base a la queja estaba siendo objeto de un proceso judicial sobre reivindicación ante el Tribunal de Primera Instancia, Sala de Humacao, en acción civil instada por la señora Mateo Santiago, como demandante, contra el licenciado Santiago Rojas y otros codemandados (Caso Civil Núm. HAC-1997-0201). Este Tribunal paralizó todo trámite relacionado a la queja.

(30) Procurador General presentó los cargos siguientes:
“PRIMER Y SEGUNDO CARGO-
“E1 Lie. Rafael A. Jorge Peña violentó los principios enunciados en los Cánones 35 y 38 de los de Ética Profesional, 4 L.P.R.A. Ap. IX C.35, al aseverar en distintos documentos, en los cuales fungió como notario, hechos sobre los cuales conocía su falsedad faltando de esa manera a la fe pública notarial, a la preservación del honor, dignidad e integridad de la profesión de abogado.
“El licenciado Santiago Rojas violentó los principios establecidos en los Cánones 35 y 38 de los de Ética Profesional, 4 L.P.R.A. Ap. IX C.35, al haber ofrecido infor-mación incorrecta a la Comisión de Reputación del Tribunal Supremo de Puerto Rico en los trámites para tomar el examen de reválida de abogado. La conducta de dicho letrado en relación a la compraventa del terreno objeto del caso HAC-1997-0201 Evelyn Mateo Santiago v. Daniel Santiago Rojas crea dudas sobre el compromiso de sinceridad, honradez y dignidad que impone la profesión legal a todo abogado”. Que-rella, pág. 8.

(31) Esto al omitir información relacionada' con la presentación de la demanda instada por la señora Mateo Santiago, luego de haber sido emplazado.

(32) Afidávit Núm. 16,119.

(33) Mediante Resolución de 4 de febrero de 2011, su obra notarial fue aprobada y entregada al Archivo general de Protocolos del Distrito Notarial de Humacao.